453 A.2d 600

**COMMONWEALTH of Pennsylvania**

v.

**Curtis L. ANTHONY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 10, 1981.

Filed Nov. 19, 1982.

Petition for Allowance of Appeal Granted May 13, 1983.

314

Brian J. O'Neill, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, McEWEN and CIRILLO, JJ.

McEWEN, Judge:

We here review the claims of an appellant who entered a negotiated plea of guilty to charges of third degree murder and robbery and was sentenced to a term of from ten to twenty years for murder of a storekeeper during an armed robbery and to a concurrent term of two and one-half to five years for the robbery. Appellant took no direct appeal but filed a petition for relief pursuant to the Post Conviction Hearing Act (hereinafter PCHA).[1] The distinguished Philadelphia County Common Pleas Court Judge Edward J. Blake conducted hearings on the petition and denied the relief sought. We affirm.

The quite compelling brief of appellant poses the following issues in the Statement of Questions Involved:

Was the guilty plea colloquy defective?

Did the trial judge err in refusing to allow appellant to withdraw his guilty plea prior to sentencing?

1. 19 P.S. § 1180–1 *et seq.* (1982 supp.).

Did appellant's failure to file a petition to withdraw his guilty plea result in a waiver of his right to challenge the validity of this guilty plea under the Post-Conviction Hearing Act?

Was appellant denied the right to a direct appeal when trial counsel failed to file an appeal after he had told appellant that he would do so?

Since we have considered and will here discuss and rule upon the substantive issues presented by the first two questions, we need not discuss the latter two questions that relate to the rights of appellant to have the substantive questions studied in this appeal.

The record reveals that during the afternoon of August 29, 1975, Arthur Wilson, married and 70 years of age, was murdered in his shop at 2841 Girard Avenue, Philadelphia. Appellant, on March 1, 1976, pleaded guilty to murder in the third degree and pleaded guilty to robbery before the learned Common Pleas Court Judge, now the distinguished Commonwealth Court Judge, Robert W. Williams, Jr. The Commonwealth, during that guilty plea hearing, provided a summary of the case to the court which included the advice that the partner of the murder victim was an eyewitness to the robbery and that this partner would testify that:

[O]n August 29, 1975 at approximately 2:30 p.m. he was co-owner with Mr. Arthur Wilson of the Robinson Clothing Store, 2841 West Girard Avenue.

At that time two individuals came into the store, one of which he would identify as the defendant. The defendant went to the counter and asked for a shirt. He was given a shirt in a cellophane wrapper. This defendant then pulled out what turned out to be a starter pistol and announced a holdup. The other defendant, which is Allan Smith, pulled out a gun and also participated in the holdup. The owner, Arthur Wilson, took his .25 calibre automatic and shot one round at the defendant, Allan Smith. Allan Smith then shot four times, one of which bullets caught Arthur Wilson in the chest, and that is the bullet wound from which he died.

The defendant was arrested on the 4th of September. Defendant gave a statement admitting his participation in the robbery of the store, and the fact that Allan Smith shot and killed the decedent. The defendant then tape recorded that statement.

Fingerprints were taken from the shirt in the cellophane wrapper which were matched and positively identified as the fingerprints of this defendant when he was arrested. (N.T. 2/27/76, pp. 24–26).

The imposition of sentence was continued so as to provide for the completion of a pre-sentence investigation report. While the court commenced a sentencing hearing on June 8, 1976, the actual imposition of sentence was further deferred until after the co-defendant had been sentenced. After a further hearing on July 7, 1976, judgment of sentence was imposed. It was not until ten months later that appellant initiated the instant PCHA proceedings.

## I

Appellant contends the guilty plea colloquy did not include the statement that the verdict of the jury to convict must be unanimous. The record confirms the colloquy did not include such a statement. It is to be noted, however, that appellant does not assert either (1) that this omission caused him to enter the plea or (2) that his waiver of a jury trial was not a knowing and intelligent waiver.

The pertinent Pennsylvania Rules of Criminal Procedure are two, namely, Rule 319(a) and Rule 1101, the relevant parts of which provide:

Rule 319. Pleas and Plea Agreements.

(a) Generally. Pleas shall be taken in open court. A defendant may plead not guilty, guilty, or, with the consent of the court, *nolo contendere.* The judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record. If the defendant shall refuse

to plead, the court shall enter a plea of not guilty on the defendant's behalf.

Rule 1101.   Waiver of Jury Trial.

In all cases the defendant may waive a jury trial with the consent of his attorney, if any, and approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury.   The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record.

■  Rule 319 establishes as a condition precedent to a guilty plea a determination by the trial judge that the plea of the defendant is tendered "voluntarily and understandingly".   Since the entry of a guilty plea posits a waiver by the defendant of his right to a jury trial, the trial judge must ascertain during the guilty plea colloquy whether the waiver by the defendant of his right to a trial by jury is, pursuant to the requirement of Rule 1101, a "knowing and intelligent waiver".

The issue we here discuss is whether the omission of the unanimity statement from the colloquy is a per se defect which requires the case to be remanded to the Common Pleas Court for trial.   It might be helpful to review the quite brief history of the contact of the Supreme Court with the colloquy upon the waiver of a jury trial.   Rule 1101 was adopted in 1968 and while it has been amended, those amendments do not appear pertinent to this discussion.

The Supreme Court in a unanimous 1971 decision, *Commonwealth v. Martin,* 445 Pa. 49, 282 A.2d 241 (1971), affirmed the judgment of sentence after determining that, "the on-the-record colloquy at the time he [defendant] entered his plea reveals it was unquestionably voluntary and intelligent.   The requisites of due process and Rule 319 of the Rules of Criminal Procedure, 19 P.S.A. were satisfied." *Id.,* 445 Pa. at 54–55, 282 A.2d at 244 (footnote omitted). While it is true the court refers to Rule 319, the requirement that a judge must determine that a guilty plea is "voluntary and understandingly tendered", the jury trial waiver collo-

quy was included in the guilty plea colloquy, so that it is clear the Supreme Court determined not only that the guilty plea colloquy under Rule 319 was satisfactory and adequate but also determined that the waiver of the jury trial was a knowing and intelligent waiver. The opinion of the court quotes for a full one and one-half pages the colloquy employed by the court after an introductory paragraph that reads:

> After a lengthy series of questions by the prosecuting attorney exploring the appellant's understanding of his actions, the court proceeded as follows. This portion of the colloquy is set out in detail because of its commendable thoroughness. *Id.*, 445 Pa. at 54 n. 2, 282 A.2d at 244 n. 2.

It is significant to note that this commendably thorough colloquy between the court and the defendant did not include any reference to the need of unanimity of a jury verdict to convict.

It was in 1973 that the Supreme Court in *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973), rejected a proposal that the court adopt a per se prophylactic rule reversing convictions for failure to comply with Rule 1101; instead the court indicated that where the waiver was proven to be a knowing and intelligent waiver, such a prophylactic rule is unnecessary. The court there did state there were three essential ingredients that are basic to a concept of a jury trial—the jury must be chosen from members of the community, the verdict must be unanimous and the accused must be allowed to participate in the selection of the jury panel—and concluded that the record did not justify a finding that there had been by that defendant a knowing and intelligent waiver. Justice Eagen concurred in the result while Chief Justice Jones dissented.

On March 23, 1978, a majority opinion of four members of the court reviewed, in *Commonwealth v. Morin*, 477 Pa. 80, 383 A.2d 832 (1978), a jury trial waiver colloquy that made no reference to any of the three "essential ingredients of a jury trial" that the Court in *Williams, supra,* 454 Pa. at 373, 312 A.2d at 600, had declared as necessary for a jury trial

waiver to be knowing and intelligent. The *Morin* majority ruled that the inadequacy of the colloquy was so complete that it would serve no purpose to remand the case to the trial court for an evidentiary hearing since the defect was such that a trial court could not rule the defendant had knowingly and intelligently waived the right to a jury trial. Chief Justice Eagen dissented and Justice Pomeroy filed a dissenting opinion, while Justice Packel did not participate in the decision.

Later that year, the Supreme Court issued two opinions on the same day, namely, November 18, 1978, in which that court declared, by a four-three margin in each case, that a defendant did not effectively waive his right to a jury trial even though the only omission was the failure by the court to inform the defendant that the verdict of the jury to convict had to be unanimous. *Commonwealth v. Ward,* 483 Pa. 53, 394 A.2d 535 (1978); *Commonwealth v. Greene,* 483 Pa. 195, 394 A.2d 978 (1978). It would seem that the Supreme Court by that slim majority in both cases had established as a per se rule that the three essential elements of *Williams, supra,* must be included in every jury trial waiver colloquy. *Ward, supra; Greene, supra.* Justice Pomeroy and Justice Larsen dissented in the *Ward* opinion and Chief Justice Eagen filed a dissenting opinion. In *Greene,* Chief Justice Eagen dissented and Justice Pomeroy filed a dissenting opinion in which Justice Larsen joined. The basis for those dissents appear from the following excerpts of the dissenting opinions. In *Ward,* Chief Justice Eagen wrote:

> I refused to accept the reasoning of the majority in . . . *Commonwealth v. Williams* . . . and will continue to refuse to join in any decision which reverses a plea of guilty solely on super-technical grounds. *Id.* 483 Pa. at 59, 394 A.2d at 537. (citations omitted).
>
> *       *       *       *       *       *

It should also be noted that Rule 319(a) of the Pennsylvania Rules of Criminal Procedure, which sets forth the requirements of a valid guilty plea colloquy *does not* require that the defendant be informed that if he chooses

a jury trial "the verdict which the jury might render would have to be unanimous." The decisions in this case and others of the same ilk are extending the requirements of the Rule. *Id.,* 483 Pa. at 60, 394 A.2d at 538. (emphasis in original).

In *Greene, supra,* Justice Pomeroy stated:

Although the colloquy here was substantially complete, the trial judge omitted any mention of one of the elements of a jury trial, that the jury's verdict shall be unanimous. This omission violated the guidelines which this Court set up for jury trial waiver colloquies in *Commonwealth v. Williams.* At that time we expressly declined to denominate those guidelines [as] a per se rule. In *Commonwealth v. Morin,* however, the majority of the Court in effect established the *Williams* guidelines as inflexible requirements of the on-the-record colloquy, with the result that appellant's counsel was held to have been ineffective in failing to object to defects in the colloquy in post-verdict motions or before the Superior Court. I dissented in *Commonwealth v. Morin,* for a variety of reasons, not the least of which was the lack of necessity, as I saw it, of molding the guidelines suggested in *Williams, supra,* into a per se rule where no widespread abuse of colloquy requirements had been shown. I continue to adhere to that view. *Id.,* 483 Pa. at 197–98, 394 A.2d at 979. (footnote and citations omitted).

Whatever facts in those cases may have compelled appellate judges of this Commonwealth to decide that the failure in those cases to include the unanimity statement in the colloquy was so grievous a shortcoming as to render the colloquy inadequate and defective, it is by far more reasonable and sound to declare that while such an omission sounds in neglect, it does not, without more—specifically, prejudice—create per se defect. It is only when appellate scrutiny of the entire record results in the conclusion that prejudice has occurred, that such an omission can rise to a defect and the voidable should become void.

The division of appellate thought upon this issue is, perhaps, a reflection of the philosophic difference that distin-

guishes those devoted to revision from those committed to tradition. While we have, in recent decades, witnessed urgent, very necessary and beneficial changes in the criminal justice system, e.g., the right to counsel, the zeal of some revisionists has caused them to race to establish requirements that defy common sense as well as sound jurisprudence, as if to frantically expiate a sense of guilt for shortcomings that were too long present but have now been corrected. While the judiciary is not to be stampeded by public opinion, neither is it to be oblivious to currents flowing within the citizenry. Even the cloistered must hear the cry of the citizenry in distress over what is perceived to be unsound excesses. And however heartened they may be at the personal pronouncement of Chief Justice Eagen that he refuses "to join in any decision which reverses a plea of guilty solely on super-technical grounds", *Commonwealth v. Ward, supra* 483 Pa. at 59, 394 A.2d at 537, that declaration becomes mere solace since it was but an expression of a minority view.

■ It would approach absurdity for us to here rule that the failure of the trial judge to advise of the need for jury verdict unanimity rendered the colloquy inadequate, defective and void, thereby requiring this matter to now proceed through a trial. A careful review of the record, including the transcript of all the proceedings, reflects the careful attention and cautious manner of the trial judge as he conducted the guilty plea proceedings. The record proves beyond dispute that the jury trial waiver and pleas of guilty were here tendered knowingly, intelligently, voluntarily and understandingly—in fact, at various points throughout the guilty plea hearing, the defendant does not simply indicate assent to the charges and the description of both the robbery and the murder but himself supplied specific details concerning his crimes. The conclusion is inescapable that appellant was motivated to plead guilty solely by a desire to secure a reduction in the crimes charged against him—from the capital offense of felony-murder and robbery to third degree murder and robbery; crimes in which there was overwhelm-

ing evidence of his participation—identification by an eyewitness and fingerprints at the scene of the murder and robbery; and crimes in which he had admitted his complicity—a statement after his arrest and a subsequent tape recording of that statement. Appellant does not—indeed, could not—argue that he would not have pleaded guilty had he known a jury verdict was required to be unanimous. There is not even a suggestion or a hint of prejudice and we cannot, therefore, rule the colloquy defective.

We have here applied the standard of review applicable to a direct appeal. The application of the standard of review under the Post-Conviction Hearing Act provides the same result since that study focuses upon whether the plea of guilty was unlawfully induced [2] and, as we have seen, the plea of guilty in this case was not unlawfully induced.

■ Nor can trial counsel, who served throughout the guilty plea and sentencing proceedings, be deemed ineffective with regard to any claim that appellant was unaware of the jury conviction verdict unanimity requirement since counsel here proved himself eminently effective by securing a plea agreement to reduced charges and a reduced sentence in the face of the overwhelming evidence of the guilt of appellant of felony-murder and robbery. A similar ruling may be found in *Commonwealth v. Weiss,* 289 Pa.Super. 1, 432 A.2d 1020 (1981), where our venerable colleague, Judge John P. Hester, after reviewing a similar factual situation, opined:

> We do not hesitate in finding that counsel's strategy in not objecting to the colloquy was very reasonable. Had an objection been registered, the plea may have been invalidated and appellant could have faced much stiffer sentencing at trial. Since there was a reasonable basis for counsel's decision, we do not find his stewardship lacking. *Id.,* 289 Pa.Superior Ct. at 7, 432 A.2d at 1023.

**2.** Section 1180–3(c)(7) of the Post Conviction Hearing Act (19 P.S. § 1180 *et seq.*) states: "To be eligible for relief under this act a person must ... prove ... (c) that his conviction or his sentence resulted from ... (7) A plea of guilty unlawfully *induced.*" (emphasis added).

## II

The brief of appellant expresses the further contention that it was error and an abuse of discretion by the trial judge to refuse to allow appellant to withdraw his guilty plea prior to sentencing. It is again necessary for a consideration of this contention to acquire a clear understanding of the relevant facts by a thorough study of the record. That study reflects the following chronology:

August 29, 1975—Arthur Wilson is murdered during the commission of a robbery at his clothing store.

September 4, 1975—Appellant is arrested. He gives a statement admitting the complicity of himself and co-defendant and later provides a recording of that statement.

February 27, 1976—The case is called for trial. Appellant pleads not guilty. The trial judge grants the application of counsel for appellant to continue the commencement of the trial from this date, Friday, until the following Monday, March 1.

March 1, 1976—The case is called for trial and during a brief recess declared so as to enable a jury panel to be brought to the court room, the court is advised that appellant intends to plead guilty.

—Appellant proceeds to plead guilty to a third degree murder and to robbery, after careful interrogation by and discussion with the court that included the expression by appellant of specific details of the crime. The sentence is deferred so as to provide for the completion of a presentence investigation report.

June 8, 1976—Appellant appears for a scheduled sentencing hearing. The court conducts a hearing but continues the actual imposition of sentence until such time as the co-defendant of appellant was sentenced.

July 7, 1976—After a hearing, appellant is sentenced to a term of from ten to twenty years for third degree murder and to a concurrent term of two and one-half to five years for robbery.

■ The basis for the argument of appellant appears in the transcript of the hearing of June 8, 1976, when the sentence was scheduled to be imposed but was further delayed:

BY THE COURT:

Q. I understand that. Is there anything else you wish to say before sentence is imposed? This is your opportunity, sir, to speak.

A. I want to know if it is possible, could I take the plea back?

Q. It is not possible. Why would you want to take your plea back?

A. I didn't fully understand it when I took it.

Q. Beg pardon?

A. I didn't fully understand it when I took it. (N.T., p. 4).

Appellant, in expressing that inquiry, did not actually state that he wished to withdraw his plea and certainly did not assert or indicate in any way that his innocence was the reason for his inquiry. It should be noted that a few moments after this inquiry, the following appears in the transcript:

BY THE COURT:

Q. Is there anything else you want to say to this court before the court imposes sentence?

A. I would like to say is it possible that I could get probation?

It would also appear that appellant addressed his inquiry to the court contrary to the advice of his counsel. The trial judge recessed the hearing so as to enable appellant to confer with the members of his family who were present at this sentencing hearing, specifically, his mother, father and brother. When the hearing resumed, counsel for appellant, who had participated, of course, in that family conference, advised the court:

I think Mr. Anthony fully—I am satisfied he fully comprehended and understood everything that took place at the

time of his plea. I think Mr. Anthony understands everything that is taking place now. He is a youngster who is just terrified with the prospect of being in prison. (N.T., p. 8).

Appellant did not, during the month that intervened between his inquiry to the court on June 8, 1976 and the hearing when sentence was imposed on July 7, 1976, either through his own efforts or through counsel, file a petition to withdraw his guilty pleas or in any other fashion attempt to withdraw those pleas.

Nor, at the time when sentence was actually imposed on July 7, 1976, did appellant express any uncertainty with regard to the guilty plea he had earlier entered or evidence any desire to withdraw that plea. Rather, at the sentencing hearing, appellant reiterated his understanding that he had pleaded guilty to the third degree murder, repeated his admission that he participated in the robbery that resulted in the death of the store owner and even responded to the inquiry of the court as to the manner in which he had disposed of his weapon.

Even if we were to interpret the inquiry addressed by appellant to the court on June 8 as equivalent to a petition to withdraw the plea and the response of the court as a dismissal of that petition—an interpretation that we do not accept but express for the limited purpose of this discussion [3]—it was within the discretion of the trial court to grant or deny the request. Pennsylvania Rule of Criminal Procedure No. 320 provides:

At any time before sentence the court may, in its discretion, permit or direct a plea of guilty to be withdrawn and a plea of not guilty substituted.

We would be unable to rule that such a refusal by the trial judge was an abuse of discretion. *Commonwealth v. Forbes,* 450 Pa. 185, 190, 299 A.2d 268, 271 (1973), states that a request to withdraw a plea prior to sentencing is to be

**3.** *See Commonwealth v. Ford,* 484 Pa. 163, 398 A.2d 995 (1979) (a written motion for withdrawal must be filed in the trial court when the validity of a guilty plea is at issue).

"liberally allowed", if the petitioner presents a "fair and just reason". The effort to withdraw the plea in that case was, however, accompanied by an assertion of innocence which the Supreme Court there declared was a "fair and just reason" for withdrawal of the guilty plea before sentencing. In the absence of a fair and just reason for withdrawal of a plea, the Common Pleas Court cannot permit withdrawal of the plea. *Commonwealth v. Mosley,* 283 Pa.Super. 28, 423 A.2d 427 (1980).

We would also reject any contention that it was an abuse of discretion and error by the court to refrain, during the period that followed the inquiry of appellant of June 8, 1976 and preceded the sentencing on July 7, 1976, from directing that the pleas of guilty be withdrawn. The court had at the conclusion of the June 8 hearing, after the family conference sparked by the uncertain inquiry by appellant to the court, heard counsel for appellant assure the court that appellant understood his plea. Appellant did not himself or through experienced counsel, during the month preceding the sentencing, again express any uncertainty about his plea or impose any inquiry concerning it or file any petition for withdrawal. At the hearing of July 7, 1976, prior to the imposition of sentence, appellant again acknowledged his guilt, reiterated his complicity and expressed details of his participation. It is not within contemplation that the trial judge should have directed the withdrawal of the plea.

Appellant contends he was denied the effective assistance of counsel by reason of the failure of trial counsel to initiate direct appeal proceedings. Since we have supplied to the contentions of appellant the scrutiny reserved for direct appeals and have ruled that there is no merit to the contention that the colloquy was defective and no merit to the contention that the purported refusal to permit the withdrawal of a guilty plea was an abuse of discretion, it is clear appellant was not denied the effective assistance of counsel by reason of the failure of his counsel to initiate a direct appeal based upon such assertions. *See, generally, Commonwealth v. Nastari,* 300 Pa.Super. 368, 446 A.2d 660 (1982).

■ Trial counsel for appellant might well have sought to challenge the guilty pleas after the imposition of sentence. That would, however, have been a futile effort. The Pennsylvania Supreme Court has recently reviewed in a majority opinion by the eminent Justice John P. Flaherty in *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982), the principles concerning and standards applicable to not only plea withdrawal prior to sentence but also plea challenge subsequent to sentence. The court there reiterated the principle that a petitioner in an effort to withdraw the plea prior to sentence must show fair and just reason for the withdrawal, while redeclaring that after sentencing, " 'a showing of prejudice on the order of manifest injustice' is required before withdrawal is properly justified. Post-sentencing attempts to withdraw a guilty plea must sustain this more substantial burden because of the recognition that a plea withdrawal can be used as a sentence testing device." *Id.,* 498 Pa. at 346, 446 A.2d at 593 (citations omitted). It is obvious, of course, that if appellant has not attained to the "fair and just" standard of plea withdrawal prior to sentence, appellant cannot attain to the "manifest abuse of justice" standard of plea challenge subsequent to sentence.

Order affirmed.