470 A.2d 540

**COMMONWEALTH of Pennsylvania**

v.

**Edward Leroy KLINGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 23, 1983.

Filed Dec. 16, 1983.

Petition for Allowance of Appeal Denied April 3, 1984.

182

184

John Francis Lyons, Harrisburg, for appellant.

Katherene E. Holtzinger, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before WIEAND, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Dauphin County denying relief under the Post Conviction Hearing Act (PCHA).[1] Appellant pled guilty in 1978 to one count of involuntary deviate sexual intercourse and two counts of indecent assault, all arising from a single incident in the city of Harrisburg. Appellant is now before this Court for the second time challenging on numerous grounds the validity of his guilty plea.

## FIRST APPEAL

On the evening of June 12, 1977, the victim of these crimes was home alone in her Harrisburg apartment. She answered her doorbell to find a stranger, who asked for a person unknown to her. The stranger asked to consult her telephone directory to look up his friend. After first refusing she said she would get the directory and turned to climb the steps to her apartment. The stranger followed her upstairs. After thumbing fruitlessly through the directory, the stranger engaged the victim in conversation. He began to ask about her personal life, and when she rebuffed his attempts to ask her out, became hostile. He ordered her into the bathroom of her apartment and forced her to undress by telling her he had a knife and making her touch what felt like a knife handle under his shirt. The stranger threatened to rape the victim if she did not cooperate. He fondled her breasts, then ordered her into the bedroom where he performed cunnilingus on her. He then made her fondle his penis, masturbated, and left.

1. Act of January 25, 1966, P.L. 1580, §§ 1-14, 19 P.S. §§ 1180-1 to 1180-14 (Supp.1965-1981), *repealed by* Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1397], effective June 27, 1980, *as amended by* Act of June 26, 1980, P.L. 265, No. 77, § 2, which delayed repeal until June 27, 1981, *as further amended by* Act of June 26, 1981, P.L. 123, No. 41, § 1, which delayed repeal until June 26, 1982, *replaced by* 42 Pa.C.S. §§ 9541-9551.

In January of 1978, appellant Edward Klinger was arrested in Cumberland County and charged with robbery and indecent assault in connection with a sexual attack on a girl in a Cumberland County store. A lineup was arranged at the Cumberland County jail, with the victims of both the Dauphin County and Cumberland County assaults in attendance. Each picked Klinger out of the lineup as her assailant. Dauphin County authorities consequently charged Klinger with the June 12 crimes.

Arthur Dils, Esquire, was present at the lineup and represented Klinger on both sets of charges. At the preliminary hearings, Klinger entered pleas of not guilty.

The Cumberland County case went to trial by jury on May 22, 1978, and Klinger was convicted of robbery and indecent assault. These convictions are not directly involved in the present appeal, but the facts surrounding them relate to certain issues appellant raises.

On May 31, 1978, Klinger was brought to Dauphin County to stand trial on the charges that are the subject of this appeal. However, on June 1, 1978, Klinger appeared with counsel before Judge William Lipsitt and pled guilty to the charges. On September 18, 1978, Judge Lipsitt sentenced Klinger to concurrent state penitentiary terms of eight to twenty years for involuntary deviate sexual intercourse and one to two years on each indecent assault count.

Nine days later, now represented by court-appointed counsel Spero Lappas, Klinger filed motions to modify the most severe sentence and to challenge the validity of his guilty plea. Judge Lipsitt denied the motion to modify sentence but scheduled a hearing for November 30, 1978, on the motion challenging the plea.

At the hearing the defendant tried to establish that Dils's ineffective representation had prompted him to plead guilty involuntarily. Klinger's three basic complaints were that Dils had not adequately investigated a possible alibi defense, had not sought to suppress the victim's identifications of Klinger at the lineup and the preliminary hearing,

and had pressured Klinger to plead guilty against his will. After listening to the testimony of five witnesses and the arguments of counsel, Judge Lipsitt denied Klinger's motion to withdraw the plea.

Klinger appealed to this Court, which affirmed in an opinion by Watkins, J. *Commonwealth v. Klinger*, 279 Pa.Super. 565, 421 A.2d 343 (1980) (allocatur refused).

## THIS APPEAL

On December 17, 1980, Klinger mounted a second challenge to his guilty plea by filing a pro se petition under the Post Conviction Hearing Act. Judge Lipsitt granted leave to proceed in forma pauperis and appointed counsel to assist Klinger in post-conviction proceedings. On April 16 and 24, 1981, Klinger filed motions seeking new counsel on the ground that appointed counsel had done nothing beyond prepare a petition restating the original. The court refused the first request, but granted the second and appointed Peter Foster, Esquire.

Klinger filed pro se amendments to his PCHA petition on July 13 and September 14, 1981. On September 22, he filed a supplemental petition prepared by Foster.

On November 13, 1981, Klinger filed a pro se petition for writ of habeas corpus essentially restating the issue raised in his September 14 amendment to the PCHA petition. Judge Lipsitt dismissed the habeas corpus petition on jurisdictional grounds, and Klinger responded with a motion to vacate and reconsider order. Judge Lipsitt reconsidered, vacated his order, and entered another order dismissing the habeas corpus petition on the ground that the issues raised in it should have been, and had been, raised under the PCHA.

Meanwhile, on November 27, 1981, Klinger filed a pro se "motion for default judgment." The Commonwealth answered, and Judge Lipsitt dismissed the motion in an order dated December 3, 1981. The Commonwealth then filed an answer to Klinger's PCHA petition.

On December 8, 1981, Judge Lipsitt dismissed Klinger's PCHA petition on the basis of the Commonwealth's answer. The next day Klinger filed a pro se motion for reconsideration of the order of December 3, and Judge Lipsitt denied.

Klinger appealed the order of December 8 to this Court. On February 1, 1982, Klinger requested Judge Lipsitt to replace Attorney Foster with new counsel to prosecute the appeal, and the judge appointed John Lyons, Esquire.

Appellate counsel's brief spans fifty-two pages (in violation of Pennsylvania Rule of Appellate Procedure 2135(1)) to present for our review eleven issues whose statement alone requires nearly two pages (in violation of Pa.R.A.P. 2116(a)). Counsel thus continues Mr. Klinger's tradition of circumlocution in the courts, and we do not approve. For lack of a more appropriate sanction we choose to call attention to the remarks of Aldisert, J., quoted in the case of *United States v. Hart*, 693 F.2d 286, 287 n. 1 (3rd Cir.1982):

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to *any* of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

I

The first substantive issue raised on appeal is that Attorney Foster provided ineffective representation in the proceedings below.

■ Mr. Foster's supplemental PCHA petition alleged, among other things, the invalidity of Klinger's guilty plea because of three alleged defects in the guilty plea colloquy.

There were prior proceedings in this case at which Klinger had the opportunity but failed to raise the issue of defects in the colloquy. The PCHA provides, at 19 P.S. § 1180–4(b), (c):

> (b) For the purposes of this act, an issue is waived if:
>
> (1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and
>
> (2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.
>
> (c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

Since Klinger's petition did not offer to rebut the presumption that he knowingly and understandingly failed to raise earlier the defects in the colloquy, or to prove that his failure was justified by extraordinary circumstances, he was precluded from obtaining relief on this issue in the PCHA court. *Id.* § 1180–3(d).

On appeal Klinger asserts that Foster was ineffective for failing to allege the ineffectiveness of Mr. Dils and Mr. Lappas as extraordinary circumstances justifying Klinger's failure to raise the defective colloquy earlier.

■■■ Our task in cases of alleged ineffectiveness of counsel encompasses both an independent review of the record and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives. However, our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

■ We apply the *Maroney* test in two steps. We first determine whether the *claim* which counsel is charged with not pursuing had some reasonable basis. If the claim was baseless, counsel cannot be found ineffective. Only if the foregone claim is of arguable merit do we proceed to the second step of the *Maroney* standard: whether counsel's *decision* not to pursue the claim had some reasonable basis designed to protect his client's interests. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

We must remember that on this first issue it is the effectiveness of PCHA counsel that is being challenged. The underlying claim is that *extraordinary circumstances,* to wit the ineffectiveness of Attorneys Dils and Lappas in prior proceedings, *justify* Klinger's failure earlier to raise defects in his guilty plea colloquy.

Since our first task is to examine the merit of Klinger's claim of extraordinary circumstances, we are not here concerned with directly deciding the validity of the guilty plea colloquy. However, in order to analyze the extraordinary circumstances claim, it is necessary to consider the three alleged defects in the colloquy: that Klinger was not informed of this state's requirement that a jury verdict be unanimous; that he was not told of his right to petition the court to withdraw his plea before sentencing; and that he was misled to believe he was pleading guilty only to one charge of indecent assault.

## A. Jury unanimity requirement.

■ One of the important rights a defendant waives by pleading guilty is the right to a trial by jury; therefore it must appear in an on-the-record colloquy that the defendant knew of this right and voluntarily waived it. Pa.R.Crim.P. 319 Comment; *Commonwealth v. Chumley,* 482 Pa. 626, 394 A.2d 497 (1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979).

At the guilty plea hearing on June 1 Klinger participated with the district attorney in a jury trial waiver colloquy. Klinger affirmatively responded that he understood every-

thing explained to him, and expressed no uncertainty about the right to jury trial. Klinger was told he would be able, if he chose, to help his attorney select twelve jurors from among members of the community. He was also told that to convict him "they" (the jurors) would have to be convinced by the Commonwealth of his guilt beyond a reasonable doubt, although it was not explicitly stated that "they" would have to be convinced *unanimously.*"

Our courts have invalidated pleas where the colloquies contained no statement of the jury unanimity requirement. *See Commonwealth v. Ward,* 483 Pa. 53, 394 A.2d 535 (1978); *Commonwealth v. Troop,* 295 Pa.Super. 485, 441 A.2d 1336 (1982); *Commonwealth v. Dello Buono,* 271 Pa.Super. 572, 414 A.2d 631 (1979). We have also applied a per se rule to find ineffective assistance on the part of counsel who takes no objection to a guilty plea colloquy that does not mention the requirement of a unanimous jury. *Commonwealth v. Smith,* 267 Pa.Super. 63, 443 A.2d 299 (1982).

However, in *Commonwealth v. Shaffer,* 498 Pa. 342, 446 A.2d 591 (1982), the Supreme Court signalled a significant departure from the position that a mere formal defect in a guilty plea colloquy invalidates the plea even where the defendant is not prejudiced. Instead, the Court held that our appellate courts must review a guilty plea in the totality of the circumstances surrounding it to determine whether it was knowingly and voluntarily entered. *Accord, Commonwealth v. Martinez,* 499 Pa. 417, 453 A.2d 940 (1982).

In *Commonwealth v. Anthony,* 307 Pa.Super. 312, 453 A.2d 600 (1982), we followed the totality-of-the-circumstances approach to hold that the absence of the jury unanimity requirement in a guilty plea colloquy did not require us to remand the case for trial where there was no allegation or evidence that the omission caused Anthony to plead guilty or that his waiver of trial by jury was unknowing or involuntary. Judge Stephen J. McEwen, Jr., writing for the Court, said, "Appellant does not—indeed could not—argue that he would not have pleaded guilty had he known a jury

verdict was required to be unanimous. There is not even a suggestion or a hint of prejudice and we cannot, therefore, rule the colloquy defective." *Id.,* 307 Pa.Superior Ct. at 322, 453 A.2d at 605. We further held that Anthony's counsel could not be found ineffective for failing to object to the omission, since an objection might have invalidated the favorable plea agreement obtained by counsel and subjected Anthony to heightened charges and a greater sentence. *See also Commonwealth v. Harris,* 311 Pa.Super. 216, 457 A.2d 572 (1983); *Commonwealth v. Campbell,* 309 Pa.Super. 214, 455 A.2d 126 (1983); *Commonwealth v. Herberg,* 306 Pa.Super. 245, 452 A.2d 536 (1982).

Mr. Klinger's attempt on this appeal to show prejudice is even more meager than was Mr. Anthony's. Not only does Klinger fail to argue that he would not have pled guilty had he known jury verdicts must be unanimous; he fails even to allege unawareness at the time of his plea of the jury unanimity requirement.[2]

The record supports the opposite conclusions, that Klinger in fact had been made aware by the time of his guilty plea that jury verdicts are unanimous, and that this consideration in fact had nothing to do with his decision to plead guilty.

It is quite notable that just days before pleading guilty Klinger had witnessed his right to trial by jury in living color. Presumably he sat in the Cumberland County court-

---

**2.** In his amended pro se petition of July 14, 1981, Klinger states baldly that he would not have pled guilty had he known that a jury's verdict must be unanimous. We should not consider this allegation, since all allegations offered to support requested relief must be stated in either the original or the *final* supplemental PCHA petition. *Commonwealth v. Ashley,* 277 Pa.Super. 287, 419 A.2d 775 (1980). The rationale of *Ashley* well suits this case. The number and sheer volume of petitions appellant cascaded upon Judge Lipsitt, of which our opinion gives only a partial listing, produced a torrent of thirteen orders from his desk between the filing of the original petition and our taking cognizance of this appeal.

Furthermore, we are convinced that the July 14 claim of ignorance, which apparently did not occur to Klinger to make in drafting his original PCHA petition or any other of its quite lengthy sequels, is no more than a makeweight. *See infra.*

room with Mr. Dils to assist in the selection of each of twelve jurors and their alternates, to hear the court instruct the jury that they would have to return a unanimous verdict, and possibly even to hear the jurors polled as to their unanimity. Attorney Dils, an experienced criminal trial practitioner of thirteen years, represented Klinger not only in the Cumberland County and Dauphin County cases, but also in criminal matters in years past. Transcript, Validity of Guilty Plea at 5–7, 10–11. We would be credulous to construct a scenario that Klinger came through his immediate past experience with the criminal justice system and with Dils to arrive on the day of his guilty plea hearing ignorant that a jury would have to agree unanimously to convict him. *Cf. Commonwealth v. Campbell, supra* (appellant's prior criminal convictions relevant to whether he was ignorant of nature and extent of right to jury trial); *Commonwealth v. Shaffer, supra* (absent claim appellant did not understand nature of crimes, court may presume counsel explained to him nature of offense in sufficient detail to give him notice of that which he admitted by pleading guilty).

In addition, Judge Lipsitt, who both took the plea and heard the evidence marshalled in support of the motion to withdraw, stated firmly on the record his belief that the plea was knowing and voluntary:

> The question is whether or not he entered the guilty plea voluntarily and intelligently and knowingly and there is just no doubt in my mind. . . . I am ready to enter an order in this case. There's just no question in my mind of the guilt of Mr. Klinger. There's no question in my mind that he knew what he was doing when he entered the guilty plea.

Transcript, Validity of Guilty Plea at 74–75.

We return to the question we began with, whether the failures of Attorneys Dils and Lappas to object to a lack of a statement of the jury unanimity requirement in the colloquy constitute extraordinary circumstances in this case.

■ It is true that, in certain situations, ineffectiveness of counsel has been held to be an extraordinary circumstance precluding a finding of waiver. *Commonwealth v. Harper*, 292 Pa.Super. 192, 436 A.2d 1217 (1981). However, equally valid is the proposition that attacks on the effectiveness of counsel may not be used to circumvent the consequences of waiving an issue. *Commonwealth v. Silvis*, 307 Pa.Super. 75, 452 A.2d 1045 (1982).

■ We are asked to hold that the actions of Dils and Lappas were extraordinary circumstances precluding waiver even assuming Klinger knew during all proceedings of the jury unanimity requirement yet failed to raise this issue until nearly two and one-half years after entering his plea. We think not. It is elementary that ineffectiveness of counsel in connection with entry of a guilty plea will serve as a basis for relief only where the ineffectiveness *caused* the defendant to enter an *involuntary or unknowing* plea. *Commonwealth v. Lutz*, 492 Pa. 500, 424 A.2d 1302 (1981); *Commonwealth v. Edrington*, 317 Pa.Super. 545, 464 A.2d 456 (1983). Appellant has not offered to prove facts overcoming a waiver in this case, and accordingly we hold that he has waived the lack of a statement of the jury unanimity requirement in his guilty plea colloquy.

B. *Right to seek withdrawal of plea before sentencing.*

Klinger was not informed on the record that he could petition the court to withdraw his plea before sentencing. Klinger did, of course, exercise his right to seek withdrawal of the plea within ten days *after* sentencing. *See* Pa.R. Crim.P. 1405(c)(2), (3); *Commonwealth v. Green*, 312 Pa. Super. 265, 458 A.2d 951 (1983).

Once again Klinger does not allege that he did not know he could file a pre-sentence petition. In fact, he alleges that before sentencing he did ask counsel to seek a plea withdrawal. Brief for Appellant at 22. Strangely enough, this alleged pre-sentence request to Mr. Dils, and Dils's failure to act on it, did not come up in Klinger's extensive testimony at the post-sentence hearing. Since the effectiveness of

Dils's representation was the focus of the hearing, his failure to respond to Klinger's request should have been raised there. But Klinger does not show how extraordinary circumstances prevented him from raising this issue at the hearing. Instead, he appears to believe that the failure of both prior attorneys to examine the colloquy and discover an asserted defect in it constitutes ineffectiveness per se. And again, this view is plainly wrong.

It would be absurd to hold that a guilty plea is involuntary or unknowing if the defendant is not told beforehand that after entering the plea he will be allowed to petition to withdraw it. Equally absurd would be to find counsel ineffective for failing to insist on such a statement in a guilty plea colloquy. The Supreme Court has ruled that knowledge of the procedural aspects of the right to withdraw a plea has no relation to whether the plea was voluntary in the first instance. *Commonwealth v. Chumley, supra.* However, finding this issue waived, we need discuss it no further.

### C.  Defendant misled as to charges.

This claim derives solely from the following exchange in the guilty plea colloquy:

MR. LEWIS: Now, if you enter a plea of guilty to these charges you are admitting committing the facts outlined in these three informations that I have gone over, do you understand that?

MR. KLINGER: Yes.

MR. LEWIS: Is it your desire to enter a plea of guilty to *this charge?*

MR. KLINGER: Yes, sir.

Transcript, Guilty Plea at 12 (emphasis added). Klinger maintains that because the record shows him assenting only to the district attorney's mention of a singular charge, the plea pertained only to the last described charge of one count of indecent assault.

It is obvious that Klinger knew all along that he was pleading guilty to all three crimes with which he was

charged. The district attorney described the elements of each of Klinger's offenses (the indecent assault of fondling the victim's breasts, the involuntary deviate sexual intercourse of the act cunnilingus, and the indecent assault of having the victim fondle the defendant's penis, each accomplished by force or the threat of force), and the victim reiterated in lucid detail the facts supporting these charges. *Cf. Commonwealth v. Martinez, supra* (graphic illustration on record of nature of injuries to robbery victim made it implausible that defendant believed he was pleading guilty to mere theft without violence). Klinger also listened while Judge Lipsitt imposed three discrete sentences for three distinct crimes. Yet not until almost two years after the minimum sentences for each of the indecent assault charges had expired, and Klinger was left serving the eight-to-twenty year term for involuntary deviate sexual intercourse, did this claim about being misled arise. This claim has no arguable merit.

For the foregoing reasons, Klinger's attempt to litigate the validity of his guilty plea colloquy by labelling three prior attorneys ineffective must be rejected.

## II

Klinger's next claim is that he was induced to plead guilty by threats and intimidation from his attorney, Mr. Dils.

Klinger raised this identical claim at the hearing on his motion to withdraw the guilty plea. The court disbelieved Klinger's testimony in support of his claim and ruled against him. There is therefore a rebuttable presumption under the PCHA that this claim has been finally litigated. 19 P.S. § 1180–4(a)(1), (c). A petitioner is precluded from obtaining PCHA relief on a finally litigated claim. *Id.* § 1180–3(d).

Klinger attempts to rebut the presumption of final litigation by alleging that his counsel on the motion to withdraw the plea, Mr. Lappas, was ineffective. Of course,

an issue cannot be finally litigated in a proceeding at which the defendant is represented by ineffective counsel. *Commonwealth v. Musser*, 463 Pa. 85, 343 A.2d 354 (1975).

Mr. Lappas's purported ineffectiveness was in failing to discover the names of inmate witnesses in the courthouse lockup who heard Dils pressuring Klinger to plead guilty. However, in the same breath Klinger makes the inconsistent allegation that he gave the names of those witnesses to Lappas, who failed to interview or subpoena them. Brief for Appellant at 25.

Flying in the face of Klinger's present allegations is his denial at the guilty plea hearing that any threats or promises had been made to him to induce his plea. Judge Lipsitt believed the denial then, he believed it after the hearing on the motion to withdraw the plea, and he was fully entitled to continue believing it in disregard of Klinger's new allegations that there were inmate witnesses to pressure from counsel. *See Commonwealth v. Orr*, 450 Pa. 632, 301 A.2d 608 (1973) (Court would not hear new factual allegation in support of previously litigated claim that counsel's ineffectiveness had induced guilty plea); *Commonwealth v. Edrington, supra* 317 Pa.Super. at 552, 464 A.2d at 459–60 & n. 3 (court could rely on truthfulness of defendant's responses at guilty plea hearing that plea was not induced by promises of counsel). .

### III

Klinger next attacks the effectiveness of Mr. Lappas in prosecuting the prior appeal to this Court.

The underlying claim upon which appellant here predicates Lappas's ineffectiveness is another already-litigated issue, namely whether Attorney Dils was ineffective for not challenging the fairness of the lineup in the Cumberland County jail. At the guilty plea withdrawal hearing and on appeal our courts determined that Dils was effective in that a challenge to the lineup identification would have been meritless. The same challenge to the lineup that Klinger proposed had been made and rejected in the Cumberland County case.

Now, armed with the theory that Lappas was ineffective for failing to bring two additional facts to our attention, Klinger is back to relitigate this issue.

The first new fact alleged is that at a June, 1980 PCHA hearing on Klinger's Cumberland County conviction, Attorney Dils testified that he "wasn't satisfied" with the fairness of the lineup because of age disparities in the lineup participants. Klinger argues that Lappas should be found ineffective for not discovering Dils's testimony and bringing it before the Superior Court.

Dils's new testimony adds nothing to the claim we rejected the first time around. Under questioning from Lappas at the guilty plea withdrawal hearing, Dils gave his objective assessment that the lineup was "basically" fair, but explained his effort to suppress the lineup identification pretrial in the Cumberland County case as based on a desire to leave no stone unturned. Dils admitted that "Ed [appellant] raised the question about the age too. I thought it was valid."

The position taken by Mr. Dils on the lineup identification procedure was made quite plain to us on the prior appeal, and it is therefore with great temerity that appellant suggests that we can now ratify our holding only "through a great leap in logic" and in abuse of our discretion.

Appellant next points to Dils's testimony at the guilty plea withdrawal hearing that his decision not to pursue a suppression motion in Dauphin County rested partly on the failure of the Cumberland County motion. Appellant argues that Dils's decision could not have been motivated by the outcome of Cumberland County proceedings, since trial in Cumberland County did not commence until seventeen days after pretrial motions in the Dauphin County case were due. Appellant concludes that Mr. Lappas was ineffective for not bringing this discrepancy to our attention on direct appeal.

Two observations dispose of this argument. First, to say that *trial* in Cumberland County commenced after the time for filing pretrial motions in Dauphin County had expired

does not tell us when the Cumberland County court denied Klinger's *pretrial* suppression motion, thus alerting Dils that such a motion was likely to fail in Dauphin County as well. Secondly, appellant's argument does nothing to bolster the merit of the underlying suppression claim, and therefore cannot support a finding that counsel were ineffective.

For these reasons we hold that appellant's allegations of Lappas's ineffectiveness are insufficient in law to reopen the finally litigated claim of Dils's effectiveness vis-a-vis the lineup identification. 19 P.S. § 1180–4(a), (c).

## IV

Klinger's next double-barreled ineffectiveness of counsel claim involves the right of allocution at sentencing. Klinger argues that Dils and Lappas were ineffective for not protecting and preserving his right to address the court. *See* Pa.R.Crim.P. 1405(a).

Our Court has held that collateral relief is not available for a mere formal failure to afford the defendant an opportunity to speak before sentence is imposed. *Commonwealth v. Barton*, 312 Pa.Super. 176, 458 A.2d 571 (1983). To be eligible for relief a PCHA petitioner must be able to show what statement he would have made and how his statement would have benefitted him at sentencing. *Id.; Commonwealth v. Rivera*, 309 Pa.Super. 33, 454 A.2d 1067 (1982).

In this case, despite being represented on both his PCHA petition and the present appeal by separate, new counsel, Klinger has at no point indicated what, if anything, he would have said to the sentencing court in mitigation of punishment. His claim therefore is one of ineffectiveness of counsel in the abstract, upon which he can obtain no relief. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981).

## V

We are next asked to find prior counsel ineffective on the basis of an affidavit dated December 11, 1980, from Mr.

Gordon McLain of Colorado. Mr. McLain swears that he told Attorney Dils over the telephone of his willingness to testify to an alibi for Klinger. Appellant urges us to find Mr. Lappas ineffective for not investigating the potential alibi witness and presenting his testimony at the hearing on Dils's effectiveness.

It does not appear on the record whether Lappas did or did not investigate McLain, but it is fairly certain what Lappas would have found had he done so. The evidence at the hearing strongly showed that no one, including McLain, could or would produce an alibi for Klinger. Dils testified that McLain expressed a decided unwillingness to come into a court of law and an inability to place Klinger on the day of the crimes. Judge Lipsitt believed Dils, and there is ample other evidence in the record besides the attorney's word to support Judge Lipsitt's finding that there was no alibi to pursue. For example, in response to the judge's question at the hearing, "Did you discuss alibi with him [Dils] or not?" Klinger himself responded, "There wasn't an alibi, not an alibi, not to where I was. Now, the only thing that was brought up, what kind of defense to use, I was fighting identification. That's what I wanted to fight it on." Transcript, Validity of Guilty Plea at 57. Pressed further on the claim of an alibi defense, Klinger then insisted that he had one but refused to divulge the names of his witnesses as "privileged information." *Id.* at 73.

Against this backdrop we have McLain's contradictory and unspecific affidavit of December 11, 1980. Judge Lipsitt was entitled in the circumstances to find the affidavit inherently incredible. We must conclude that Attorney Lappas was not ineffective for failing to pursue this fruitless issue.

## VI

Appellant next offers the affidavits of two inmate witnesses each of whom claims that at various lineups conducted in Harrisburg in 1977 the victim of these crimes

identified him as the perpetrator. Appellant argues that counsel were ineffective for failing to discover these prior misidentifications, or, in the alternative, that the affidavits are after-discovered evidence entitling him to relief. *See* 19 P.S. § 1180–3(c)(13).

The Commonwealth argues that the lineups referred to never existed and that the alleged misidentifications never occurred.

We are constrained to find with the Commonwealth.

Among Klinger's various petitions under the PCHA was a request for police reports containing the victim's initial statements. Judge Lipsitt granted this request and further ordered the Harrisburg City Police to provide Klinger with all statements given by the victim after the day of the assault. Prior identifications by the victim certainly would have been covered by this order, yet none turned up. Appellant's claim is baseless.

## VII

Appellant next argues that the entire proceeding against him is void because the informations filed against him contained rubber-stamped facsimiles of the district attorney's signature. This argument holds no water. Our Supreme Court recently held that a rubber-stamped information has the same presumption of validity as a manually signed information. *Commonwealth v. Emanuel*, 501 Pa. 581, 462 A.2d 653 (1983).

In a related claim, appellant argues that his prior attorneys were ineffective for not challenging the rubber-stamped informations in prior proceedings. Appellant relies on *Commonwealth v. Emanuel*, 285 Pa.Super. 594, 428 A.2d 204 (1981), *rev'd in Emanuel, supra,* in which the Superior Court held that a rubber-stamped information may be voided when objected to pretrial. Appellant reasons that Attorney Dils should have objected pretrial to the informations, and that Attorney Lappas should have raised his failure to do so as ineffectiveness of counsel. However, even apart from the problem of granting relief on a now-dis-

credited holding, it must be remembered that both attorneys acted in this case before our decision in *Emanuel* came down. We have firmly rejected the argument that counsel acting before *Emanuel* can be found ineffective for not anticipating its holding. *Commonwealth v. Warren*, 307 Pa.Super. 221, 453 A.2d 5 (1982); *Commonwealth v. Brinton*, 303 Pa.Super. 14, 449 A.2d 54 (1982).

## VIII

Klinger's next argument is that direct appeal counsel was ineffective for failing to correct a misstatement of the evidence in the trial court's memorandum pursuant to Pa.R.A.P. 1925(a). A review of our opinion in the first appeal reveals that notwithstanding a minor misstatement in the trial court's memorandum, our Court took full cognizance of the evidence actually presented in the post-plea hearing. This issue is meritless.

## IX

Appellant next assails the effectiveness of PCHA, post-sentencing, and guilty plea counsel for not raising and preserving his right to petition the court to withdraw his plea before sentencing.

Presentencing attempts to withdraw a guilty plea may be granted in the discretion of the trial court for any fair and just reason, whereas post-sentencing attempts are allowed only on a showing of manifest injustice. *Commonwealth v. Shaffer, supra*. Through two appeals to this Court, Klinger has failed to show any plausible reason, let alone any fair and just reason, why he should be allowed to withdraw his plea. Klinger's triple-tiered claim of ineffective assistance of counsel adds nothing to his empty claim.

Moreover, we held earlier that Klinger waived the claim that his first attorney was ineffective on this issue. I.B., *supra*.

## X

Finally, we must decide whether Judge Lipsitt erred in denying Klinger a hearing on his PCHA claims. A

206

hearing should be granted when a petition alleges facts that if proven would entitle the petitioner to relief, unless the claims made are patently frivolous and without a trace of support in the record or from other evidence submitted by the petitioner. 19 P.S. § 1180–9. A Supreme Court gloss on this rule holds that in deciding whether to grant a hearing, the PCHA court need accept as true only factual allegations which are non-frivolous, specific, and not controverted by the record. *Commonwealth v. Savage*, 433 Pa. 96, 249 A.2d 304 (1969); *Commonwealth v. Stokes*, 426 Pa. 265, 232 A.2d 193 (1967). Judge Lipsitt was well acquainted with this case, having taken Klinger's guilty plea and heard the evidence on his motion to withdraw the plea. Klinger's PCHA petition confronted Judge Lipsitt with many of the same basic issues that he had already decided adversely to Klinger. The supporting factual allegations were either frivolous or contradicted in the record. We hold that Judge Lipsitt acted properly in dismissing the petition without a hearing.

Order affirmed.

JOHNSON, J., concurred in the result.