496 A.2d 31

**COMMONWEALTH of Pennsylvania**

v.

**Leon WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1984.

Filed July 19, 1985.

Gerald T. Gervasi, Merion Station, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Stuart Suss, Assistant District Attorney, West Chester, amicus curiae.

Before SPAETH, President Judge, and WICKERSHAM, BROSKY, CIRILLO, BECK, POPOVICH and HESTER, JJ.

CIRILLO, Judge:

This case was certified to the Court en banc to address problems arising under the doctrine of merger of offenses for sentencing.

# I

Leon Williams was tried by jury and convicted of aggravated assault, possession of a prohibited offensive weapon, carrying a firearm on a public street in Philadelphia, and resisting arrest. The charges stemmed from an incident that occurred on an evening in February, 1976, in the City of Philadelphia. Officers Moriarity and Winchester of the Philadelphia Police Department were on highway patrol; near the intersection of Belmont and Westminster Avenues they spotted two men by a row of parked cars. One of the men had a suspicious large bulge under his jacket, so the officers got out of their car to investigate. Officer Winchester approached the man with the bulge, who turned out to be Michael Jefferson. The bulge turned out to be a fourteen-inch mallet. Officer Moriarity approached the other man, appellant Leon Williams, and asked to see identification. After showing the officer an ID card, Williams began to shake and tremble, then suddenly jumped back and crouched. Instinctively, Moriarity yelled out "He has a gun" and dove for cover. In the same instant a blast emanated from the sawed-off shotgun Williams had produced from under his clothing. The officers returned fire as Williams stood behind a nearby car pointing the shotgun at both officers and warning them to stay back or he would shoot. Williams then fled down the street with Moriarity in pursuit on foot and Winchester giving chase in the squad car. Moriarity had to take cover several times when Williams turned and waved the shotgun at him. Eventually

Williams discarded the gun, ran into an abandoned housing complex, and disappeared.

About three days later, a New York policeman stopped an automobile driven by Williams headed north on a highway in upstate New York. The Philadelphia authorities, however, were unable to catch up with Williams until April of 1977, when he was brought back to stand trial on charges arising from the shotgun incident. After a jury found him guilty of the previously mentioned charges, Williams was sentenced in the Philadelphia Court of Common Pleas to consecutive, maximum prison terms for each offense.

## II

Williams appealed to this Court, alleging that he was unlawfully and duplicitously sentenced to consecutive maximum terms of imprisonment for assault, resisting arrest, possessing a prohibited offensive weapon, and carrying a firearm on a public street, since all of these convictions resulted from the single unlawful act of firing a sawed-off shotgun, and they thus merge for sentencing purposes.

Williams also alleged trial court error and ineffectiveness of trial counsel in relation to the following issues: 1) the sufficiency of the evidence to prove aggravated assault; 2) the prosecutor's injection of inflammatory statements and personal opinion into his closing argument; 3) the prosecutor's reference to non-record evidence of Williams's address; 4) the admission of hearsay to establish the direction in which the shotgun was fired; 5) the admission of hearsay testimony that Michael Jefferson told the police where Williams lived; and 6) the admission of evidence that Williams gave an alias to the New York policeman who stopped him three days after the incident, when the existence of this evidence had not been disclosed in response to the defendant's pre-trial discovery request.

A three-judge panel of this Court unanimously rejected all of appellant's claims save the sentencing merger issue. On that issue the panel held that for sentencing purposes

resisting arrest merged with aggravated assault, and the two firearms offenses merged with each other. The panel vacated sentence on the charges of resisting arrest and carrying a firearm in Philadelphia. One judge dissented in part and would have held that none of the offenses merged.

■ We granted the Commonwealth's application for reargument limited to the merger issue. We have, however, reviewed each of appellant's remaining claims de novo, and found them not to warrant relief. On the merger issue, we now hold that the firearms and weapons offenses merge with each other for sentencing purposes, but that the aggravated assault and resisting arrest charges do not merge with each other, nor do they merge with the other violations.

The doctrine of merger is at best a confusing area of the law to approach. As Mr. Justice Pomeroy frankly admitted, speaking for the Supreme Court of Pennsylvania, "Our decisions on the doctrine of merger are not altogether harmonious." *Commonwealth v. Sparrow,* 471 Pa. 490, 503, 370 A.2d 712, 718 (1977). Superior Court decisions on sentencing merger exhibit little consistency in rationale of their own. The confusion surrounding merger stems in part from its dual origins in constitutional and common law. To curtail this trend of confusion, we strongly urge courts deciding sentencing merger issues in the future to keep both of these roots firmly in mind.

### III

### A

#### Constitutional limitations on multiple punishments

One of the guarantees found in the Double Jeopardy Clause of the United States Constitution is protection against more than one punishment for the "same offence." U.S. Const. amend. V; *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). The Fifth Amendment proscription on multiple punishments for the same offense has of late been made binding on the State governments by virtue

of the Fourteenth Amendment, U.S. Const. amend. XIV. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

Pennsylvania has its own constitutional provision making it unlawful for any person to be twice put in jeopardy for the "same offense." Pa. Const. art. 1, § 10. As our State Supreme Court recently reaffirmed, however, in the multiple punishments context the double jeopardy guarantee contained in Article 1, § 10 is coextensive with its counterpart in the Fifth Amendment. *Commonwealth v. Goldhammer*, 507 Pa. 236, 247–248 n. 4, 489 A.2d 1307, 1313 n. 4 (1985); *accord, Commonwealth v. Bostic*, 500 Pa. 345, 350–51 n. 4, 456 A.2d 1320, 1322 n. 4 (1983). Thus, in determining whether multiple punishments have been unconstitutionally inflicted for the same offense, our State courts simply apply the rules used to effectuate the Fifth Amendment guarantee against double jeopardy. *See, e.g., Commonwealth v. Houtz*, 496 Pa. 345, 437 A.2d 385 (1981); *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981).

In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), the Supreme Court set forth the definitive test for determining when conduct in violation of more than one statute must be treated as the "same offense" for double jeopardy purposes: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." That is, more than one offense may be found and punished in any given act or transaction only where each offense requires proof of an element not contained in the other(s). *Id.*

The *Blockburger* "same offense" test is the same one that traditionally has been used to determine whether one offense is a "constituent" or "lesser included" offense of another. *See Tarver, supra; see also Ohio v. Johnson*, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *Commonwealth v. Pemberth*, 339 Pa.Super. 428, 489 A.2d 235 (1985).

The test depends solely on a comparison of the elements of the crimes charged, not on the similarity or even the identity of the evidence introduced at trial to establish their commission. *See United States v. Woodward*, 469 U.S. ——, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); *Commonwealth v. Maddox*, 307 Pa.Super. 524, 453 A.2d 1010 (1982). Only when all the elements of one crime are also elements of the other may they be classified as the "same offense." *See, e.g., Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *see and compare* Black's Law Dictionary 812 (5th ed. 1979) ("Lesser included offense"); *cf. also* 18 Pa.C.S. § 109(1) (when prosecution barred by former prosecution for the same offense).

 Although it is frequently overlooked, it cannot be overemphasized that the "same offense" test of double jeopardy does not prohibit cumulating punishments at a single trial for multiple statutory offenses simply because they all arise from the same act or transaction. Even a single, indivisible act may support more than one punishment under separate statutory provisions if each provision requires proof of a fact that the other does not. Thus, in *Woodward, supra*, a unanimous Supreme Court held that the defendant's solitary act of checking off the "no" box on a customs form supported double punishments for making a false statement to a federal agency and failing to report currency, because each statutory offense required proof of an element not contained in the other. *See also Commonwealth v. Whelton*, 319 Pa.Super. 42, 465 A.2d 1043 (1983) (single, undifferentiated act of possessing one gun supported two discrete sentences for separate firearms violations without offending double jeopardy). "Same offense" refers, in the strict sense, to a greater and its necessarily included lesser offense; one must involve the other not only in the factual context of the case, but also by definition of the crimes charged. For two crimes arising from the same transaction to be the "same offense," a comparison of their statutory elements must reveal that proof of one offense

will necessarily prove the other. *See Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

Classic examples of one offense being necessarily included in another are the greater and lesser offenses of rape and fornication, and robbery and theft. *See Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A.2d 920 (1941); *Commonwealth v. Mitchell*, 319 Pa.Super. 170, 465 A.2d 1284 (1983); *Commonwealth v. Jellots*, 277 Pa.Super. 358, 419 A.2d 1184 (1980). To use another example that has recently come to prominence, in a felony-murder prosecution the underlying felony is a lesser included offense of, and therefore the "same offense" as, the felony-murder itself, because proof of felony-murder ipso facto proves all the elements of the underlying felony; indeed, proof of the underlying felony is necessary to establish that a killing was in fact felony-murder. *Tarver, supra; see also Harris, supra; Maddox, supra. Cf. People v. Robideau*, 419 Mich. 458, 355 N.W.2d 592 (1984) (plurality opinion) (suggesting crimes like felony-murder/underlying felony are not true greater/lesser included offenses, but "compound" and "predicate" crimes).

The final principle of double jeopardy law which must be stated here is that the Double Jeopardy Clause does not restrict the *legislature's* ability to prescribe more than one punishment for the same offense. It serves only to restrain courts from imposing and prosecutors from seeking more than one punishment under a particular legislative enactment, and to prevent the court from exceeding its legislative authorization by imposing more than one punishment for the same offense. *Bostic, supra; Tarver, supra; see also Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). For double jeopardy purposes, the *Blockburger* "same offense" test is merely a rule of statutory construction to be employed where the legislature has not explicitly authorized separate punishments for a single offense. "The assumption underlying the rule is that Congress *ordinarily* does not intend

to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent."* *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715, 723–24 (1980) (emphasis added).

> Where . . . a legislature specifically authorizes cumulative punishment under two statutes, *regardless of whether those two statutes proscribe the "same" conduct under Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 544 (1983) (emphasis added).

Thus, in *Hunter,* and again in *Bostic, supra,* where a legislative intention to do so was clearly spelled out, cumulative punishments could be imposed for a felony and for the use of a firearm in commission of that felony, even though one was necessarily involved in the other and both therefore amounted to the "same offense" as defined in *Blockburger.*

## B

### Double jeopardy applied

■ Bearing in mind the *Blockburger* "same offense" test as a constitutionally established rule of statutory construction, we turn to examine whether it was a violation of double jeopardy for appellant to receive separate sentences for aggravated assault, resisting arrest, prohibited offensive weapons, and carrying a firearm on the streets of Philadelphia. We conclude that it was not.

The aggravated assault charge was submitted to the jury under 18 Pa.C.S. § 2702(a)(1) & (2). These provisions state in pertinent part: *"(a) Offense defined.*—A person is guilty of aggravated assault if he: (1) attempts to cause serious

bodily injury to another ... *(2) attempts to cause ... serious bodily injury to a police officer making or attempting to make a lawful arrest....* " (Emphasis ours). The crime of resisting arrest of which appellant was found guilty is defined at *id.* § 5104:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

■ Initially, a comparison of the elements of these two crimes reveals that each requires proof of a fact that the other does not. The aggravated assault charge lodged against appellant required proof that he attempted to cause *serious bodily injury* to Officer Moriarity. "Serious bodily injury" is defined in the Crimes Code as "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301. To prove this element of the assault, the Commonwealth had to prove the actual intentional discharging of the shotgun at Moriarity. This particular fact was not crucial to the resisting arrest charge. Resisting arrest does not require an attempt to cause serious bodily injury to a police officer. Here, evidence that appellant brandished the shotgun, threatened the officers with it, and used it to escape would alone have been sufficient to prove that he created "a substantial *risk* of bodily injury" (defined as "impairment of physical condition or substantial pain," *id.* ), or that he put up resistance requiring a policeman to use "substantial force" to overcome it. Any of these lesser degrees of force employed by appellant in turn would have sufficed to prove resisting arrest.

Of course, the actual firing of the gun also could have supported a conviction for resisting arrest. Nevertheless, resisting arrest does not thereby become a lesser included

offense of aggravated assault, because by definition resisting arrest also has an additional element not required for aggravated assault: proof that the perpetrator specifically intended by his resistance to prevent an officer from effecting an arrest or discharging a duty. An aggravated assault charge, even if pressed under subsection 2702(a)(2), does not require the Commonwealth to prove such specific intent. All it requires is an attempt "to cause serious bodily injury to a police officer making or attempting to make a lawful arrest." To convict under 2702(a)(2), a jury need not find that assaultive conduct against an officer making an arrest was specifically intended to thwart the arrest. General hatred for policemen, malice against a particular officer, misconceived notions of self-defense, jealousy, wanton cruelty, any of a rogues' gallery of vile motives could account for someone's attempt to seriously injure a police officer engaged in the process of arrest. Williams could have been convicted for violating 2702(a)(2) under any of these theories, without regard to his specific purpose for discharging the shotgun. It would have been no defense, for example, for him to prove lack of awareness that a lawful arrest was under way, thereby negating any possible intention to prevent arrest.

Thus, the aggravated assault and resisting arrest charges brought against appellant each required proof of an additional fact not included in the other: aggravated assault required an *attempt* to cause *serious* bodily injury to Officer Moriarity; resisting arrest required *intent* to prevent a lawful arrest. Despite a "substantial overlap" in the evidence used at trial to prove these two crimes, they were not the "same offense" for double jeopardy purposes. *See Illinois v. Vitale, supra; Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293–94 n. 17, 43 L.Ed.2d 616, 627 n. 17 (1975); *cf. Jordan v. State,* (Ala.Crim.App. No. 6 Div. 421, filed Jan. 22, 1985) (in homicide prosecution, vehicular homicide not lesser included offense of murder).

The firearms offenses appellant committed are defined at 18 Pa.C.S. § 908 ("Prohibited offensive weapons") and *id.*

§ 6108 ("Carrying firearms on public streets or public property in Philadelphia"). As pertinent here, the crime of prohibited offensive weapons was made out by appellant's simple use or possession of a specific weapon, a sawed-off shotgun, *id.* § 908(a), (c); *see Commonwealth v. Walls*, 303 Pa.Super. 284, 449 A.2d 690 (1982) (allocatur denied); *Commonwealth v. Gatto*, 236 Pa.Super. 92, 344 A.2d 566 (1975), whereas the firearms offense under Section 6108 required proof that appellant carried a firearm in the City of Philadelphia, *see Commonwealth v. Whelton, supra.* Precisely the same act on Williams's part established both crimes; nevertheless they are not the "same offense" for double jeopardy purposes because each requires proof of a fact that the other does not. *Cf. id.*

The charge of carrying a firearm in Philadelphia required proof that appellant possessed the firearm in a particular location, namely, on a public street in Philadelphia. This element of location was not relevant to a conviction under Section 908, which proscribes the possession anywhere of a certain class of prohibited weapons.

To prove a violation of Section 908, on the other hand, the Commonwealth had to establish that a particular type of weapon belonging to the prohibited class was involved. *See Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984). This element was established here by proof that the firearm in appellant's possession was indeed a *sawed-off shotgun.* 18 Pa.C.S. § 908(c). Proof of the exact type of weapon was not necessary under Section 6108, which was satisfied once the Commonwealth proved that appellant carried *any* "firearm, rifle or shotgun" in Philadelphia.

Each firearms offense, therefore, was a discrete offense under the Double Jeopardy Clause. From the foregoing discussion of the elements of the various crimes charged, it is also apparent that the firearms charges were not constitutionally the "same offense" as aggravated assault or resisting arrest. Thus, there was no double jeopardy violation in sentencing appellant separately for each offense.

## IV

### A

### Common law merger doctrine

■ Our inquiry has not ended, however, for we have yet to delve into the common law doctrine of merger, which in this State can be traced at least as far back as *Harman v. Commonwealth*, 12 Serg. & Rawle 69 (Pa.1824). We must recognize at the outset that the doctrine is to a large extent coterminous with the double jeopardy protection against multiple punishments. Thus, it has been said that merger raises essentially the same question as the doctrine of lesser included offenses. *Commonwealth v. Simpson*, 316 Pa.Super. 115, 462 A.2d 821 (1983); *Commonwealth v. Williams*, 299 Pa.Super. 278, 445 A.2d 753 (1982); *Commonwealth v. Olsen*, 247 Pa.Super. 513, 520 n. 4, 372 A.2d 1207, 1211 n. 4 (1977); *Commonwealth v. Ackerman*, 239 Pa.Super. 187, 191 n. 4, 361 A.2d 746, 748 n. 4 (1976). *See also Commonwealth v. Sparrow, supra*, 471 Pa. at 521 n. 7, 370 A.2d at 728 n. 7 (Nix, J., dissenting); *Commonwealth ex rel. Russo v. Ashe*, 293 Pa. 322, 142 A. 317 (1928); *Commonwealth v. Hill*, 237 Pa.Super. 543, 353 A.2d 870 (1975) (allocatur denied). The test of merger is also said to be whether one crime "necessarily involves" another. *Commonwealth v. Nelson*, 452 Pa. 275, 305 A.2d 369 (1973); *Commonwealth v. Mitchell, supra; Commonwealth v. Hill, supra*. Often merger is invoked side by side with double jeopardy principles as the grounds upon which "duplicitous" sentences may be vacated. *See, e.g., Commonwealth ex rel. Moszczynski, supra; Commonwealth v. Garnett*, 336 Pa.Super. 313, 485 A.2d 821 (1984); *Commonwealth v. Laing*, 310 Pa.Super. 105, 456 A.2d 204 (1983); *Commonwealth v. Maddox, supra; Commonwealth v. Williams*, 290 Pa.Super. 209, 434 A.2d 717 (1981). Indeed, one former member of the Pennsylvania Supreme Court offered the following explanation for the existence of Pennsylvania's merger doctrine:

The doctrine of merger was adopted by this Court because the double jeopardy clause of the Pennsylvania constitution has traditionally been applied only to capital offenses. *E.g., Commonwealth v. Baker,* 413 Pa. 105, 196 A.2d 382 (1964). The double jeopardy clause of the United States Constitution, of course, had not yet been applied to the states. *Benton v. Maryland,* 395 U.S. [784], 794, 89 S.Ct. 2056 [2062], 23 L.Ed.2d 707 (1969). *See generally Commonwealth v. Campana,* 452 Pa. 233, 243–45, 304 A.2d 432, 436–67 (plurality opinion of Roberts, J.); *id.,* 452 Pa. at 269, 304 A.2d at 446 (Pomeroy, J., dissenting), *vacated and remanded,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).

*Commonwealth v. Carter,* 482 Pa. 274, 280 n. 3, 393 A.2d 660, 663 n. 3 (1978) (Pomeroy, J., dissenting, joined by O'Brien, J.). *See also Commonwealth v. Boerner,* 281 Pa.Super. 505, 422 A.2d 583 (1980) (allocatur denied).

■ As it has developed in this jurisdiction, however, the doctrine of sentencing merger is actually broader and more flexible than the double jeopardy protection against multiple punishments for the "same offense." *See Commonwealth v. Sayko,* 333 Pa.Super. 265, 482 A.2d 559 (1984); *see also Commonwealth v. Simpson, supra.* The doctrine acts to limit the multiplicity of sentences which may be meted out for what is, in practical effect, a single criminal act, even when a comparison of the elements of the various crimes charged does not reveal that any of those crimes is necessarily included in any other. "Thus, in merger of sentences cases, we focus not only on the similarity of the elements of the crimes but also, and primarily, on the facts proved at trial, for the question is whether those facts show that in practical effect the defendant committed *a single criminal act....*" *Commonwealth v. Crocker,* 280 Pa.Super. 470, 475, 421 A.2d 818, 820–21 (1980) (emphasis added). In deciding whether merger is required, a court is obliged to interpret the verdict not in the light of theoretical possibili-

ties, but rather in the light of common sense. *Commonwealth v. Newman,* 323 Pa.Super. 394, 470 A.2d 976 (1984).

When courts decide under the merger doctrine that two crimes "necessarily involve" one another, it does not always mean that all the elements of one crime are included in the other. It means that on the facts of the case the two crimes were so intimately bound up in the same wrongful act that as a *practical* matter proof of one crime necessarily proves the other, so that they must be treated as the same offense. *See, e.g., Commonwealth v. Jackson,* 271 Pa.Super. 131, 412 A.2d 610 (1979); *Commonwealth v. Richardson,* 232 Pa.Super. 123, 334 A.2d 700 (1975). If the same facts show that practically speaking there was only one offense against the Commonwealth, then the defendant may be punished for only one offense despite the number of chargeable offenses arising out of the transaction. *See, e.g., Commonwealth v. Ayala,* 492 Pa. 418, 424 A.2d 1260 (1981); *Commonwealth v. Artis,* 294 Pa.Super. 276, 439 A.2d 1199 (1982); *Commonwealth v. Eberts,* 282 Pa.Super. 354, 422 A.2d 1154 (1980).

The difficulty in applying this doctrine is how to determine, practically speaking, when the facts disclose but one offense. This inquiry demands special attention to the "unique facts" of each case. *See Commonwealth v. Belgrave,* 258 Pa.Super. 40, 391 A.2d 662 (1978) (Cercone, J., concurring and dissenting). However, the merger doctrine is not and cannot be so fluid that it permits absolute discretion in the judiciary to decide on the facts of each case whether or not two statutory crimes were "essentially the same criminal act." *Commonwealth v. Watson,* 311 Pa.Super. 89, 92, 457 A.2d 127, 128 (1983). Especially when we consider that separate punishments for merged offenses are "illegal," *see Commonwealth v. Byron,* 319 Pa.Super. 1, 465 A.2d 1023 (1983); *Commonwealth v. Tolassi,* 303 Pa. Super. 177, 449 A.2d 636 (1982), and that duplicitous sentences are "beyond the power" of the court to impose, *see Commonwealth v. Franklin,* 306 Pa.Super. 422, 430 n. 4, 452 A.2d 797, 801 n. 4 (1982), we realize that the merger

doctrine relies on more than an educated judicial guess as to how many crimes were committed "in practical effect."

The need to apply the merger doctrine usually arises only in situations where the legislature has outlawed the same conduct under more than one statute. We have just indicated that crimes may sometimes merge even when the Double Jeopardy Clause does not require it. Therefore, we should be very concerned with articulating the reasons why merger occurs.

If anything is settled in sentencing law, it is that the legislature has the exclusive power to define criminal offenses and set the punishments to be imposed on them. *See Whalen v. United States, supra; Tarver, supra; see also Commonwealth v. Hernandez,* 339 Pa.Super. 32, 488 A.2d 293 (1985). A punishment, even if it constitutes a duplicitous punishment, is not illegal if the legislature has authorized it. The only principle that can therefore justify the merger doctrine is that, just like the Double Jeopardy Clause, it provides a rule of statutory construction for determining what the legislature intended. *See Commonwealth v. Soudani,* 398 Pa. 546, 159 A.2d 687, *cert. denied,* 364 U.S. 886, 81 S.Ct. 177, 5 L.Ed.2d 107 (1960); *see also Bostic, supra,* 500 Pa. at 354 n. 5, 456 A.2d at 1324 n. 5; *Commonwealth v. White,* 341 Pa.Super. 261, 491 A.2d 252 (1985).

The difference is that the merger doctrine does not ask us to adhere rigidly to a "same offense" test in searching for legislative intent. Nor, on the other hand, is it concerned exclusively with the physical facts that must be proven to make out various crimes. Instead, it obliges us to take a broader view of the purposes of criminal legislation and the diverse evils which particular enactments were meant to protect against. "Analysis of duplicitous sentence questions has traditionally revolved around the concept of injury to the sovereign, in this case the Commonwealth.... Therefore, in order to support the imposition of two sentences ..., it must be found that [the defendant's] conduct constituted two injuries to the Commonwealth." *Common-*

*wealth v. Walker,* 468 Pa. 323, 331–32, 362 A.2d 227, 231
(1976). *Accord, Commonwealth v. Sanders,* 339 Pa.Super.
373, 489 A.2d 207 (1985); *Commonwealth v. Padden,* 335
Pa.Super. 51, 483 A.2d 950 (1984). *See also Common-
wealth v. Miller,* 469 Pa. 24, 364 A.2d 886 (1976) (explaining
separate harms done by conspiracy to commit offense and
the completed offense). *Cf.* 18 Pa.C.S. § 110(1)(iii)(A) (for-
mer conviction or acquittal bars subsequent prosecution for
"same conduct" under different statute unless each offense
"requires proof of a fact not required by the other *and the
law defining each of such offenses is intended to prevent
a substantially different harm or evil....*") (Emphasis
added). *Cf. also United States v. Woodward, supra* ("sep-
arate evils" analysis also relevant to double jeopardy in-
quiry into congressional intent to impose multiple punish-
ments under different enactments); *Albernaz v. United
States, supra* (same); *Commonwealth v. Allen,* 506 Pa.
500, 486 A.2d 363 (1984) (citing different interests vindicat-
ed by criminal contempt proceedings and prosecution for
assault arising out of same conduct).

■ In order to find that separate statutory offenses
merge, we must therefore determine not only that the
crimes arose out of the same criminal act, transaction, or
episode, but also that the statutes defining the crimes
charged were directed to substantially the same harm or
evil. If we do not take both of these steps, we fail in our
duty to effectuate the legislative mandate in carrying out
statutory punishments.

■ Obviously if a defendant has committed several
discrete criminal acts, he may be punished separately for
each of them despite their close relationship in a single
criminal episode, as long as each act is a separate injury in
itself. If there are separate criminal acts, the first condi-
tion for application of the merger doctrine does not exist.
Once a defendant commits an original crime, he is not
permitted to compound the injuries he inflicts and then
escape liability for additional crimes under the guise that
they all were done in the same criminal transaction. *See,*

*e.g., Commonwealth v. Gray,* 339 Pa.Super. 385, 489 A.2d 213 (1985) (defendant could be sentenced for two robberies arising from the same transaction involving two victims); *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438 (1985) (defendant could receive separate sentences for inchoate offenses of attempted murder and conspiracy to commit murder where lives of two different persons were at stake in the same transaction); *Commonwealth v. Button,* 332 Pa.Super. 239, 481 A.2d 342 (1984) (rationale applied to double murder); *Commonwealth v. Miranda,* 296 Pa.Super. 441, 442 A.2d 1133 (1982) (en banc) (defendant fired one shot that struck both a male and a female victim; he then pointed the gun at the male threateningly, and again fired the gun in the direction of the female; held, separate sentences were proper for attempted murder and reckless endangerment of the male, and aggravated assault and reckless endangerment of the female); *Commonwealth v. Wojciechowski,* 285 Pa.Super. 1, 9, 426 A.2d 674, 678 (1981) (allocatur denied) (separate sentences for rape, involuntary deviate sexual intercourse, indecent assault, and unlawful restraint based on single sexual attack were warranted; "[i]t is unthinkable that a woman, once having been raped, is in the position where her attacker can then abuse her in any other fashion sexually ... without incurring further sanctions for these separate and distinct crimes"); *accord, Commonwealth v. Pifer,* 284 Pa.Super. 170, 425 A.2d 757 (1981).

 Even if the defendant's criminal conduct consists of a single physical act, however, the merger doctrine does not bar separate punishments if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest. *See White, supra* (single act supported separate punishments for rape and incest); *Miranda, supra; Commonwealth v. Lawton,* 272 Pa.Super. 40, 414 A.2d 658 (1979) (single act of swinging fist into crowd supported separate sentences for simple assault on one person and reckless endangerment of another).

## B
## Merger and double jeopardy contrasted

To demonstrate how merger principles operate, and how they differ in application from double jeopardy rules, we will examine situations in which double jeopardy and merger theory might yield different results.

Perhaps the prime example of merger leading to a different conclusion than the "same offense" test is the case of an unlawful entry undertaken with intent to commit a crime in the premises. In most cases such an unlawful entry would support convictions for both burglary, 18 Pa.C.S. § 3502, and criminal trespass, *id.* § 3503. In *Commonwealth v. Carter, supra,* the Pennsylvania Supreme Court held that burglary and criminal trespass do not stand in the relationship of greater and lesser included offenses, because they contain disparate elements: burglary requires proof of entry into a building with intent to commit a crime therein, an element not necessary to establish criminal trespass; criminal trespass requires proof that the defendant knew he lacked license or privilege to enter, while burglary does not. Burglary and criminal trespass therefore are not the "same offense." Nevertheless it has uniformly been held that cumulative sentences for both burglary and criminal trespass based on the same entry violate the doctrine of merger of offenses for sentencing purposes. *See Commonwealth v. Smith,* 499 Pa. 507, 454 A.2d 1 (1982) (per curiam); *Johnston v. Commonwealth,* 85 Pa. 54 (1877); *Commonwealth v. Gordon,* 329 Pa.Super. 42, 477 A.2d 1342 (1984); *Commonwealth v. Vazquez,* 328 Pa.Super. 86, 476 A.2d 466 (1984); *Commonwealth v. Simpson, supra; Commonwealth v. Cadogan,* 297 Pa.Super. 405, 443 A.2d 1185 (1982); *Crocker, supra; see also In re Mark C.,* 340 Pa.Super. 151, 489 A.2d 887 (1985) (attempt-trespass merges with attempt-burglary). The statutes prohibiting burglary and criminal trespass do not serve separate and distinct interests of the Commonwealth. Both protect citizens and their property from illegal entries. Of course, the burglary statute includes added protection

against the criminal intent of the actor once he "breaks the close." However, the purpose of the criminal trespass statute, to punish illegal entries, is entirely subsumed in the prohibition against burglary. Hence, the crimes merge when based on the same entry. *Smith, supra.*

As another example, indecent assault merges with rape when they arise from the same act. Each crime has an element not included in the other: indecent assault requires "indecent contact," which by definition is a "touching" done "for the purpose of arousing or gratifying sexual desire," 18 Pa.C.S. §§ 3126, 3101; rape requires the further element of sexual intercourse, *i.e.,* penetration, *id.* § 3121, but does not require the Commonwealth to prove that the purpose of the actor was to arouse or gratify sexual desire. As a practical matter, however, proof of rape will almost always suffice to prove indecent assault. If the defendant has indeed raped his victim, it is not protecting any additional interest of the victim or society to impose additional punishment for the indecent assault that necessarily inheres in the rape. Thus, the crimes merge. *Commonwealth v. Flynn,* 314 Pa.Super. 162, 460 A.2d 816 (1983); *Commonwealth v. Schilling,* 288 Pa.Super. 359, 431 A.2d 1088 (1981); *Commonwealth v. Richardson, supra.* Of course, if the defendant has committed more than one discrete act during a sexual assault, and each constitutes a separate invasion of the victim's person, each act may be punished separately. *See, e.g., Commonwealth v. Klinger,* 323 Pa.Super. 181, 470 A.2d 540 (1983) (separate convictions for involuntary deviate sexual intercourse and two indecent assaults based on three acts committed in one episode); *Commonwealth v. Pifer, supra.* The fact that a defendant has visited one injury upon the person of another does not insulate him from further liability if he chooses to continue his assaultive behavior and in doing so commits additional crimes. *See Wojciechowski, supra; Pifer, supra.*

The crimes of simple assault and recklessly endangering another person are not always the "same offense" for double jeopardy purposes. Simple assault as charged may

require the actual infliction of bodily injury, 18 Pa.C.S. § 2701(a)(1), (2), while reckless endangerment requires conduct which *threatens* a person with "death or serious bodily injury," *id.* § 2705. However, where the same act towards the same victim both causes physical injury and creates the possibility of an even greater degree of injury, a just application of the merger doctrine dictates that the perpetrator be punished for only one crime. *See Commonwealth v. Artis, supra* (single act of stabbing the victim). Once again, however, if the defendant commits an assault and at the same time endangers an interest in a manner separate from the injury he has done by the act of assault, he may be punished for both crimes. *See, e.g., Miranda, supra; Pifer, supra; Lawton, supra; see also Commonwealth v. Cavanaugh,* 278 Pa.Super. 542, 420 A.2d 674 (1980) (Court affirmed separate convictions for aggravated assault, reckless endangerment, and terroristic threats arising out of single attack on victim with tire iron; held, however, that separate sentence for simple assault merged).

Frequently where the prosecutor has succeeded in pursuing multiple charges of violent crime arising from the same criminal act, they will merge if the evidence shows that they all did essentially one and the same harm to the same Commonwealth interest. *See, e.g., Commonwealth v. Darras,* 337 Pa.Super. 32, 486 A.2d 465 (1984) (motion for allowance of appeal filed) (attempted homicide/aggravated assault/reckless endangerment merged; kidnapping/unlawful restraint merged); *Commonwealth v. Laing, supra* (aggravated assault/reckless endangerment); *Commonwealth v. Sheffield,* 306 Pa.Super. 274, 452 A.2d 550 (1982) (same; also kidnapping/unlawful restraint/false imprisonment); *Commonwealth v. Walls, supra* (robbery/reckless endangerment); *Commonwealth v. Moore,* 300 Pa.Super. 488, 446 A.2d 960 (1982) (robbery/aggravated assault/reckless endangerment); *Commonwealth v. Eberts, supra* (robbery/reckless endangerment); *Commonwealth v. Jackson,* 271 Pa.Super. 131, 412 A.2d 610 (1979) (same). A perfect illustration of the principle involved is provided by the case

of *Commonwealth v. Ford,* 315 Pa.Super. 281, 461 A.2d 1281 (1983), in which a single gunshot to the victim's back resulted in convictions for attempted murder, aggravated assault, and recklessly endangering another person. Because all three crimes were based on the single act of shooting the victim, and each statute violated protected substantially the same Commonwealth interest in the life and safety of one person, the crimes necessarily merged for sentencing purposes. If a defendant attempts to murder someone, but his act done in furtherance of that purpose only succeeds in seriously injuring and endangering the victim, only one harm has been done. The Commonwealth's interest in preserving the life of the victim is not supplemented by separate and distinct interests in saving the victim from serious bodily injury and endangerment. The statutes prohibiting murder, assault, and reckless endangerment all strive to guard citizens from varying degrees of being put in physical peril. When all these degrees of danger are encompassed in the same criminal act, there can be punishment under only one statute.

Generally in such cases the prosecutor will have offered the jury a "smorgasbord" of offenses from which to choose. *Artis, supra,* 294 Pa.Super. at 282, 439 A.2d at 1202. Often this is to insure a conviction under any of a number of alternative factual theories which the jury might decide to believe. Once multiple convictions have been obtained, however, it may become the prosecutor's duty not to oppose merger of offenses at sentencing if in good faith he believes that the multiple charges were premised on a single source of injury to the Commonwealth. In this respect, the prosecutor must assist the sentencing court in securing a just disposition of the charges in accordance with the intent of the legislature. Such forthrightness on the part of prosecutors would not only serve legislative goals, but would contribute to judicial economy by reducing the number of "illegal" sentences that are imposed, then later challenged on appeal or through post-conviction proceedings.

However, particularly in the arena of violent offenses, courts must be ever wary not to let separate depredations

on the public weal go unpunished through a faulty application of the merger doctrine. There is always a temptation to rely by rote on prior authority to hold that particular statutory offenses merge. *Cf. Darras, supra; Commonwealth v. Yancey*, 301 Pa.Super. 427, 447 A.2d 1041 (1982); *Commonwealth v. Brown*, 259 Pa.Super. 502, 393 A.2d 938 (1978). But merger is rarely a rule to be mechanically applied; it usually demands careful scrutiny of the particular facts and charges on which the defendant is being sentenced. *See Commonwealth v. Buser*, 277 Pa.Super. 451, 419 A.2d 1233 (1980). Where the charges are not greater and lesser included offenses in the true sense, it will seldom be the case that one statutory crime merges with another automatically.

Suppose a defendant robs his victim, and wantonly injures or tries to kill him as well; such a case raises a legitimate question whether the defendant has actually done two substantially different injuries to the peace and dignity of the Commonwealth. Sometimes to prove that a theft was robbery it is necessary to prove an aggravated assault; if so the same facts will prove both robbery and assault and they will merge. *See Commonwealth v. Nelson*, 337 Pa.Super. 292, 486 A.2d 1340 (1984). The legislative intention to punish the defendant only once for the robbery would be apparent in such a case since the robbery statute has a built-in prohibition against inflicting serious bodily injury in the course of stealing property. *See* 18 Pa.C.S. § 3701(a)(1). On the other hand, if an aggravated assault were not "necessarily involved" in the robbery and the prosecutor could prove each without proving the other, then maybe two separate offenses in fact were committed. *See, e.g., Commonwealth v. Thompson*, 343 Pa.Super. 468, 495 A.2d 560 (1985). A robbery can be carried out by the infliction of serious injury, but it can also be accomplished by mere threats of force ("terroristic threats") or simple assault; the commission of robbery by these or any means does not give the robber carte blanche to engage in as many repeated attempts on the life or well-being of the victim as

the circumstances allow. If a court were nevertheless to merge the offenses of robbery and aggravated assault as a matter of routine, it might defeat whatever legislative purpose there was in identifying the taking of property by force and the doing of physical harm to persons as two separate and distinct means of injuring the Commonwealth. *See, e.g., Moszczynski, supra.* It might also permit the defendant to escape liability for one of two separate and distinct crimes which he has committed and should justly pay for. We cannot allow our merger doctrine to act as an open invitation to violent assailants to go ahead and perpetrate actual physical injury on their victims after having robbed or raped them by putting them in fear of such injury. This would clearly be an abuse of a doctrine whose salutary purpose is to prevent the imposition of multiple sentences on a single criminal offense. *See Thompson, supra; see also Pifer, supra* (no merger of attempted homicide/aggravated assault where first charge was based on slashing of victim's throat, second on choking and laceration of victim); *Commonwealth v. Jackson,* 269 Pa.Super. 583, 410 A.2d 854 (1979) (Wieand, J., dissenting); *Commonwealth v. Hill, supra* (lesser assault charge merged into greater, but separate sentence for robbery allowed to stand).

## V

Before proceeding to apply the merger doctrine to the facts of this case, we must confront the arguments advanced by amicus curiae, the Chester County District Attorney's Office, that we should either abolish the doctrine of sentencing merger in Pennsylvania, or repudiate statements by this Court indicating that a "single act" can never support more than one statutory sentence. We reject the first form of relief requested, but grant the latter.

### A

**Should the merger doctrine be abolished?**

In support of its plea to abolish common law merger, amicus curiae asserts that the Pennsylvania Legislature and

Supreme Court have both made known their intentions to do away with the doctrine. Of course, if that were true we would certainly have to reassess the doctrine's continued validity as both rule of statutory construction and common law rule. However, amicus curiae has overstated its case.

The argument premised on legislative intent proceeds in part from passage of the 1972 Crimes Code. Although the Code derived largely from the Model Penal Code (1962 rev.), the Legislature failed to adopt Model Penal Code § 1.07 as part of the Crimes Code, an omission which amicus curiae finds significant. Section 1.07 would have prohibited conviction and punishment for both a greater and lesser included offense. The Legislature's rejection of Section 1.07, it is argued, demonstrates its total rejection of the principle of merger.

In further support of this novel proposition, amicus curiae maintains that the Legislature has specifically spoken where it intended to prohibit cumulative punishments. Thus, 18 Pa.C.S. § 906 ("Multiple convictions barred") forbids multiple convictions for "inchoate offenses" designed to commit or culminate in commission of the same crime; and *id.* § 3502(d) prohibits multiple convictions for both burglary and any crime below a felony of the second degree which the burglar intended to commit in the premises entered.

This argument addressed to legislative intent overlooks the likely explanation for the Legislature's rejection of Section 1.07 of the Model Penal Code: the General Assembly intended to ratify the common law doctrine of merger as developed in the courts of this Commonwealth; it did not wish to replace the doctrine with a statutory rule of merger containing a legislative definition of greater and lesser included offenses. As the Supreme Court said in a related context, in holding that the new Crimes Code had not abrogated the common law rule that conspiracy does not merge with the completed offense which was the object of the conspiracy: "statutes are not presumed to make changes in the rules and principles of the common law or

prior existing law beyond what is expressly declared in their provisions...." *Commonwealth v. Miller, supra,* 469 Pa. at 27–28, 364 A.2d at 887.

By expressly including Sections 906 and 3502(d) in the Crimes Code, the Legislature adopted a policy of statutory sentencing merger in two specific situations. *See Commonwealth v. Lewis,* 319 Pa.Super. 33, 465 A.2d 1038 (1983) (§ 906); *Commonwealth v. Jefferson,* 307 Pa.Super. 18, 452 A.2d 881 (1982) ("conviction" as used in § 3502(d) refers to judgment of sentence, not verdict). Enactment of these specific provisions does not demonstrate a legislative desire to dispense with the merger doctrine in all other situations. In fact, in Section 6103 of the Code the Legislature has again addressed the issue of sentencing merger, but in this provision has decreed that merger of offenses shall *not* occur. 18 Pa.C.S. § 6103 (punishment for certain violent crimes committed with firearms does not preclude separate sentence for Uniform Firearms Act violation). Obviously if the Legislature had completely abrogated the doctrine of sentencing merger, passage of Section 6103 to bar merger in one particular instance would be meaningless.

Amicus next points out that the Supreme Court in the case of *Commonwealth v. Bostic, supra,* "called into question" the validity of the merger doctrine. The assertion is based on the Court's statement that the common law rule of merger, *"whatever its current validity may be in the 'lesser included offense' area,* has no application in the instant situation where the legislature has explicitly manifested its desire to impose an additional sentence on a parallel crime." 500 Pa. at 354 n. 5, 456 A.2d at 1324 n. 5 (emphasis added).

This ambiguous pronouncement in *Bostic* may be nothing more than the Supreme Court's recognition that "in the 'lesser included offense' area," the merger doctrine is now superfluous because the Double Jeopardy Clause has assumed the role of protecting against multiple punishments for greater and lesser included offenses. In cases not involving greater and lesser included offenses, the Supreme

Court has continued to apply common law rules of merger. This holds for cases arising under the 1972 Crimes Code, *see Commonwealth v. Smith, supra* (burglary and criminal trespass merged); *Johnson v. Commonwealth,* 499 Pa. 380, 453 A.2d 922 (1982) (rape and indecent assault merged); *Commonwealth v. Ayala, supra* (attempted robbery merged with aggravated assault), as well as for at least one case decided after *Bostic, see Commonwealth v. Lohr,* 503 Pa. 130, 468 A.2d 1375 (1983) (no merger of attempted murder and statutory rape).

■■■ We are thus compelled not to accept amicus curiae's argument that merger has been impliedly abolished. Nor for that matter do we think abolishment of the doctrine advisable, as in our view it continues to serve as a vital restraint on the government's ability to inflict oppressive multiple punishments for what in practical effect was a single offense against the Commonwealth.

## B

### "Single act/single injury" theory rejected

Amicus next argues that it is an unsupportable and erroneous extension of the merger doctrine which holds that the "same act" may never eventuate in more than one punishment. Our decision of this issue is important to a proper disposition of this case because appellant makes a point of arguing that all four of his convictions stem from the same act. Thus, once the prosecution proved that appellant stood in a street in Philadelphia and fired a shotgun at Officer Moriarity, it had proven all the facts necessary to establish aggravated assault, resisting arrest, possession of a prohibited offensive weapon, and carrying a firearm in Philadelphia. Appellant contends that because all four offenses were comprised in a "single act," the offenses merged for sentencing purposes.

The proposition that a "single act" will never support more than one punishment can be found in or read into numerous decisions of this Court. *See, e.g., Common-*

*wealth v. Walls, supra,* 303 Pa.Super. at 295, 449 A.2d at 695 ("appellant cannot be punished twice ... for the same act"); *Commonwealth v. Artis, supra,* 294 Pa.Super. at 282–83, 439 A.2d at 1202 ("appellant was charged with committing but one act.... Therefore he could be sentenced for but one offense"); *see also Padden, supra; Sayko, supra; Laing, supra; Commonwealth v. Bryant,* 282 Pa.Super. 600, 423 A.2d 407 (1980); *Boerner, supra; Crocker, supra; Buser, supra; Commonwealth v. Lezinsky,* 264 Pa.Super. 476, 400 A.2d 184 (1979).

Upon a careful review of these cases, we perceive that by and large they state an incomplete version of the *proper* rule of merger, which is that "an individual can be punished only once for a single act *which causes only one injury to the Commonwealth." Commonwealth v. Schilling, supra,* 288 Pa.Super. at 370, 431 A.2d at 1093. Many of the cases cited seem to omit the emphasized portion of the rule, under the mistaken assumption that a "single act" *necessarily* can cause only one injury to the Commonwealth. This idea that a "single act" can cause but a "single injury" has very recently met with disapproval in our Supreme Court.

The single act/single injury theory is predicated in part on *Commonwealth v. Walker, supra,* wherein the Supreme Court said, " '[w]here there is but one act of cause of injury, or death of a number of persons, there is but one injury to the Commonwealth, but where the acts or causes are separate, they are separate injuries to the peace and dignity of the Commonwealth.' " 468 Pa. at 331, 362 A.2d at 231 (quoting *Commonwealth v. Veley,* 63 Pa.Super. 489, 496 (1916)). The Court also stated that "it is beyond the power of a court imposing sentence to impose multiple sentences on a defendant for a *single act."* 468 Pa. at 330 n. 3, 362 A.2d at 230 n. 3 (emphasis added). These statements were supported in the text of the opinion by a line of Pennsylvania Superior Court cases holding that a single act resulting in multiple deaths could support only one conviction for involuntary manslaughter. *Accord, Commonwealth v.*

*Zaengle,* 332 Pa.Super. 137, 480 A.2d 1224 (1984) (vehicular homicide).

*Walker* was a case where dual punishments had been imposed for rape and statutory rape arising out of a single act of forcible sexual intercourse. Under the applicable statutes as they read at the time, statutory rape was a *consensual* act of intercourse with a female under the age of sixteen, whereas rape was sexual intercourse with a victim of any age procured through force. Thus, the crimes were mutually exclusive by definition, and the Court correctly found in the case before it that only one injury, forcible invasion of the female's person, had been accomplished by the defendant's "single act." Although the Court therefore vacated the statutory rape sentence as "duplicitous," the "single act/single injury" language quoted above simply was not necessary to the holding.

The Supreme Court first questioned the soundness of the *Walker* dicta in *Commonwealth v. Norris,* 498 Pa. 308, 446 A.2d 246 (1982), when it upheld separate sentences for rape and corruption of the morals of a minor arising from a single act of sexual intercourse. The Court held: "Clearly, unlike the situation in *Walker,* the Commonwealth has suffered two injuries from appellant's single act in that appellant not only engaged in forcible intercourse with an individual who was not his spouse, but also corrupted the morals of a child under the age of eighteen." 498 Pa. at 319, 446 A.2d at 251 (footnotes omitted).

Then last year the Supreme Court explicitly overruled the quoted portion of *Walker* in *Commonwealth v. Frisbie,* 506 Pa. 461, 485 A.2d 1098 (1984). *Frisbie* held that nine separate sentences for reckless endangerment could be imposed on a defendant for a single act that injured nine people. The Court stated that "in resolving the issue of whether a single act which injures multiple victims can be the basis for multiple sentences, our task is simply to determine whether the legislature intended that each injury constitute a separate offense." *Id.,* 506 Pa. at 466, 485 A.2d at 1100. Upon examining the language of the reckless

endangerment statute, the Court concluded that the Legislature clearly intended to prescribe separate punishment for each individual endangered by the single act of a defendant. The Court therefore reversed the holding of the Superior Court which had relied on the "single act/single injury" theory. *Cf. Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (single discharge of shotgun wounding two federal officers was single violation of statute making it an offense to use force against a federal officer engaged in "performance of official duties"; decision based entirely on statutory construction); *Commonwealth v. Gray, supra* (explaining that State robbery statute comprehends separate punishment for each individual robbed).

*Frisbie,* like *Norris* and *Walker* before it, was a decision based solely on the constitutional protection against double jeopardy. Nevertheless, it clearly demonstrated that the Supreme Court considers the permissibility of multiple punishments for a single act to be a question of legislative intent. It also clearly overruled the primary authority upon which this Court has relied for the proposition that multiple punishments for a "single act" are "prohibited." *See Commonwealth v. Henck,* 329 Pa.Super. 275, 478 A.2d 465 (1984) (dictum); *Commonwealth v. Boerner, supra,* 281 Pa.Super. at 515 n. 11, 422 A.2d at 588 n. 11; *Crocker, supra; Lezinsky, supra.*

The erroneous belief that the merger doctrine makes it illegal in all circumstances to impose more than one sentence for a single act is also predicated in part on the seminal case of *Commonwealth ex rel. Moszczynski v. Ashe, supra.* In that case the Supreme Court first articulated the rule that crimes merge where one "necessarily involves" the other. In the course of upholding separate sentences for burglary, robbery, and felonious attempt to kill, the Court said in a much-quoted passage:

> The true test of whether one criminal offense has merged in another is *not* (as is sometimes stated) whether the two criminal acts are "successive steps in the same transac-

tion" but it is whether one crime *necessarily involves* another, as, for example, rape involves fornication, and robbery involves both assault and larceny. The "same transaction" test is valid only when "transaction" means a *single act.* When the "transaction" consists of two or more criminal acts, the fact that the two acts are "successive" does not require the conclusion that they have merged. Two crimes *may be* successive steps in *one* crime and therefore merge, as, *e.g.,* larceny is merged in robbery, and assault and battery is merged in murder, or they may be two distinct crimes which do not merge. If a defendant commits a burglary and while in the burglarized dwelling he commits the crimes of rape or kidnapping, his crimes do not merge, for neither of them is necessarily involved in the other: When one of two criminal acts committed successively is not a necessary ingredient of the other, there may be a conviction and sentence for *both.* In the case before us, any one of the three crimes named might have been committed without any of the others being committed and consequently there was no merger of the crimes.

343 Pa. at 104–05, 21 A.2d at 921. Apparently the inference that has sometimes been drawn from *Moszczynski* is that if two crimes are based on a "single act," the "same transaction" test applies and the crimes merge. *See, e.g., Bryant, supra; Buser, supra.*

However, the Supreme Court's obvious purpose in the quoted passage was only to refute the mistaken idea that crimes necessarily merge if they are "successive steps in the same transaction." The Court declared that no, "successive steps" do not merge into one crime unless they *necessarily involve* one another. The "same transaction" test, the Court said, applies only when "transaction" refers to a "single act." The Court left unstated, however, what this "same transaction" test was that applied when a single act was involved.

For a statement of the "same transaction" test, we must look to the 1928 case of *Commonwealth ex rel. Russo v.*

*Ashe, supra,* 293 Pa. at 324, 142 A. at 318: "where the distinct crimes set forth grow out of the *same transaction, differing only in degree,* only one penalty can be imposed after conviction...." (Emphasis added).

Thus, early on the Supreme Court recognized two similar but distinguishable situations in which various crimes based on a closely related set of facts would merge. First, two crimes that are successive steps merge if they *necessarily involve* one another. *Moszczynski; Commonwealth v. McCusker,* 363 Pa. 450, 70 A.2d 273 (1950); *see also, e.g., Commonwealth v. Edwards,* 302 Pa.Super. 522, 449 A.2d 38 (1982) (successive steps of possession, possession with intent to deliver, and delivery of controlled substance necessarily involve one another, merge); *accord, Commonwealth ex rel. Ciampoli v. Heston,* 292 Pa. 501, 141 A. 287 (1928); *Commonwealth v. Neidig,* 340 Pa.Super. 217, 489 A.2d 921 (1985) (petition for allocatur filed). In the second situation, where there has been but a *single act,* two crimes based on it will merge if they are but *different degrees* of the same crime. *Russo; see also Commonwealth ex rel. Shaddock v. Ashe,* 340 Pa. 286, 17 A.2d 190 (1941).

Thus, aside from the discredited *Walker* dicta, the Supreme Court has never suggested that a prosecution based on a "single act" may never beget more than one punishment. All it has ever said is that multiple punishments are prohibited where the crimes growing out of a single act are merely different degrees of the same crime, or "necessarily involve" one another, or have harmed only one interest of the Commonwealth. *Commonwealth v. Lohr, supra; Commonwealth v. Walker, supra; Commonwealth v. Miller, supra; Commonwealth ex rel. Moszczynski, supra; Commonwealth ex rel. Russo, supra; see also Schilling, supra.*

> *Even a single act or series of acts* may constitute two separate offenses if each offense requires proof of facts additional to or different from those required to prove the other. *Commonwealth v. Grassmyer,* 266 Pa.Super. 11, 402 A.2d 1052 (1979); *Commonwealth v. Ruehling,* 232 Pa.Super. 378, 334 A.2d 702 (1975).

*Commonwealth v. Jackson,* 269 Pa.Super. 583, 588, 410 A.2d 854, 857 (Wieand, J., dissenting) (emphasis added).

## C

### Summary

▮▮▮▮ To summarize, in applying rules of merger courts should remember that the test is a flexible, fact-based tool for determining how many offenses against the Commonwealth have actually been committed. Despite the repeated and varied attempts of judges to state one "true test" of merger, the question of merger will often turn on an appraisal of the precise facts of the case. However, in the interest of promoting as much uniformity as possible in the application of merger rules, we emphasize that merger of offenses does not depend solely on a finding that there has been only one act or succession of acts. It also depends fundamentally and ultimately on the *different* finding that there has been only one injury to the Commonwealth.

▮▮▮▮ We hold that separate punishments may be imposed for a single, indivisible act where the act includes conduct proscribed by separate statutes each of which seeks to prevent a substantially different harm or evil. *See* 18 Pa.C.S. § 110(1)(iii)(A). Our holding is in harmony with the purpose of the merger doctrine to effectuate legislative intent in the sentencing of offenders. *See id.* § 104(1) ("The general purposes of this title are: (1) to forbid and prevent conduct that unjustifiably inflicts or threatens harm to individual or public interest . . . ."). In determining how many different "evils" are present in a given criminal act, the sentencing court should devote close attention to the language the Legislature has used and the scheme it has followed in defining offenses in the Crimes Code and other penal statutes. The court must also approach the question with a heavy dose of common sense. *Cf. Commonwealth v. Allen, supra; United States v. Woodward, supra; Albernaz v. United States, supra; Callanan v. United States,* 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961) (Opinion by Frankfurter, J.) (detailing separate harms wrought by successive steps of conspiracy and completed

offense); *Commonwealth v. White, supra* (analysis of different harms done by incest and rape); *Commonwealth v. Capers,* 340 Pa.Super. 136, 489 A.2d 879 (1985) (differentiating harms arising from indecent assault and simple assault); *see also People v. Robideau, supra* (question is whether different societal "norms" are involved).

## VI

Turning to the charges at hand, we find that when Mr. Williams discharged a shotgun at Officer Moriarity, and by the same or related acts resisted the officers' attempts to perform their duties, he violated two separate and distinct interests which inure to the peace and dignity of this Commonwealth. By assaulting the officer, he endangered that precious and irreplaceable interest which all right-thinking citizens share in the life and safety of every person in the Commonwealth, whether police officer or civilian. By resisting arrest, Williams threatened that time-tested yet fragile social balance whereby our elected representatives provide laws for the good of society, and public officers to execute and enforce them, and under which respect and obedience shown to officers discharging their lawful duties are as essential to the orderly administration of justice as the laws themselves.

In deciding that the aggravated assault and resisting arrest statutes protect different interests of the Commonwealth, we have considered not only the language and evident purpose of each statute, but also that the Legislature has classified them separately under "Offenses Involving Danger to the Person" (Title 18, Part II, art. B), and "Offenses Against Public Administration" (*id.* art. E). Compare *Commonwealth v. Nelson,* 452 Pa. 275, 305 A.2d 369 (1973), which held that assault and battery merged with resisting arrest, but so held under a previous statute defining the latter crime as, inter alia, *"assault[ing] or beat[ing]* any officer ... making a lawful arrest...." Act of June 24, 1939, P.L. 872, § 314.

We have little difficulty concluding that Williams's conviction for carrying a firearm in Philadelphia did not merge

with aggravated assault, for merger is a rule of statutory construction and the Legislature has specifically provided that a conviction under the Uniform Firearms Act shall not merge with a violent offense. 18 Pa.C.S. § 6103. Nor is there any valid reason why the UFA violation should merge with resisting arrest, even though the illegal gun undoubtedly was instrumental in facilitating Williams's acts of resistance and escape. The interests of the Commonwealth in compelling the submission of arrestees to police officers, and in discouraging people from carrying unlicensed firearms around on the streets of Philadelphia, are so clearly distinct that we can say without further discussion that the conduct involved affronted two separate sources of public peace and dignity.

However, the firearms offense and the prohibited offensive weapons charge merged. We can conceive that the statutes defining these crimes *theoretically* might protect different interests of the Commonwealth; the firearms statute is particularly directed against the possession of guns in public places in Philadelphia, a practice which would cause alarm among the people of that heavily populated city if left unchecked; the prohibited weapons statute, on the other hand, is clearly directed against those types of weapons which have no legitimate purpose and are universally found to be used only in the commission of crime. *See Commonwealth v. Jackson, supra* Part III.B. Nevertheless where as here possession of the same gun in the same circumstances is proof of both crimes, they "necessarily involve" one another on the facts of the case, and the Commonwealth interests protected by the two statutes are not sufficiently diverse to allow the conclusion that two separate harms have been done. We will vacate the sentence for prohibited offensive weapons due to the clearly expressed legislative intention to punish the UFA violation separately where a firearm was used in a violent crime.

We need not remand for resentencing on the other convictions because the sentence imposed for prohibited offensive weapons could not have affected the maximum sentences

which the court imposed on the other charges. *See Commonwealth v. Boettcher,* 313 Pa.Super. 194, 459 A.2d 806 (1983); *see also Goldhammer, supra* (where some convictions are vacated on appeal on statute of limitations grounds, it violates double jeopardy to resentence defendant to increased terms on remaining counts).

Sentence for prohibited offensive weapons vacated; otherwise judgment affirmed.

POPOVICH, J., concurs in the result.

SPAETH, President Judge, files a concurring opinion, in which BROSKY, J., joins.

SPAETH, President Judge, concurring:

Although I agree with the result reached by the majority, and with much of its opinion, my reasoning is somewhat different.

The common law doctrine of merger was developed before and independently of double jeopardy principles. The Fifth Amendment double jeopardy provision was first applied to the states through the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The equivalent Pennsylvania provision did not apply to non-capital offenses. *See, e.g., Commonwealth v. Baker,* 413 Pa. 105, 196 A.2d 382 (1964); *Commonwealth v. Simpson,* 310 Pa. 380, 165 A. 498 (1933); *McCreary v. Commonwealth,* 29 Pa. 323 (1857); *Commonwealth v. Boerner,* 281 Pa.Super. 505, 422 A.2d 583 (1980). As a result, the Pennsylvania courts developed the doctrine of merger without reference to double jeopardy but as a common law doctrine to preclude multiple punishments for the same offense. *See Commonwealth v. Carter,* 482 Pa. 274, 280 n. 3, 393 A.2d 660, 663 n. 3 (1978) (POMEROY, J., dissenting).

The common law doctrine of merger is often traced to *Harman v. Commonwealth,* 12 Serg. & Rawle 68 (1824), where the Pennsylvania Supreme Court concluded that "[i]t would have been unjust" to punish appellant for assault with intent to ravish because the offense "merged in the

greater offence of rape." *Id.* at 71–72. In subsequent cases, the test for determining merger was stated in terms of the relationship of the offenses. *See, e.g., Commonwealth ex rel. Moszczynski v. Ashe,* 343 Pa. 102, 21 A.2d 920 (1941) (test is whether one crime "necessarily involves" another); *Commonwealth ex rel. Russo v. Ashe,* 293 Pa. 322, 142 A. 317 (1928) (test is whether distinct crimes grow out of same transaction, differing only in degree). However, the courts did not confine themselves to this test, but even in the absence of a greater and lesser offense relationship, held that merger occurred where the particular facts of the case demonstrated only one offense, *see, e.g., Commonwealth ex rel. Shaddock v. Ashe,* 340 Pa. 286, 17 A.2d 190 (1941) (assault and battery with intent to commit rape, aggravated assault and battery, and rape merged where offenses were constituents of the major felony), and where there was no expression of legislative intent dictating separate punishments, *see, e.g., Commonwealth v. Mentzer,* 162 Pa. 646, 29 A. 720 (1894) (if criminal acts were "successive steps in but one taking of the same public money they would amount to but one crime in fact, and it is not to be supposed that the statute intended ... [multiple punishments]").

In 1972, the legislature abolished common law crimes, 18 Pa.C.S. § 107(b), but retained "common law definitions except insofar as inconsistent with the statute," *see* S. Toll, Pennsylvania Crimes Code Annotated § 107 (1974) *quoting* the Reporter's Comment. The Crimes Code did not address merger in general, providing only that there should be merger under 18 Pa.C.S. § 3502(d) (burglary merges with intended offense unless offense is a felony of the first or second degree) and under 18 Pa.C.S. § 906 (inchoate offenses merge), and that crimes committed with a firearm should not merge with violations of the Uniform Firearms Act, 18 Pa.C.S. § 6101 *et seq.* 18 Pa.C.S. § 6103 (formerly 18 P.S. § 4628(b)). Although the legislature adopted portions of the Model Penal Code (P.O.D.1962) in formulating the 1972 Crimes Code, it rejected a provision, § 1.07, that would have covered merger in general.

"[S]tatutes are not presumed to make changes in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions, ...." *Commonwealth v. Miller*, 469 Pa. 24, 27–28, 364 A.2d 886, 887 (1976). *See also Truck Terminal Realty Co. v. Commonwealth, Department of Transportation*, 486 Pa. 16, 403 A.2d 986 (1979); *Jahn v. O'Neill*, 327 Pa.Super. 357, 475 A.2d 837 (1984). In *Miller*, the Court held that

> the failure of the Legislature to include, within the Crimes Code, any provision mandating the merger of criminal conspiracy into the completed substantive offense indicates that no change in the existing law was intended.

469 Pa. at 28, 364 A.2d at 887.

Contrary to the view of *amicus*, Chester County District Attorney's Office, *Miller* supports the position that the common law doctrine of merger has not been abrogated by the Code. *Cf.* Brief for Amicus Curiae at 22.[1]

When the common law doctrine of merger is applied to the present case, the following conclusions are apparent. Each of the four offenses—aggravated assault; resisting arrest; prohibited offensive weapons; and carrying a firearm on a public street in Philadelphia—has an element that the others do not have. Therefore, no merger occurs under that part of the common law doctrine of merger sometimes referred to as the "elements test." However, two of the offenses—the two weapons offenses—do merge, under that part of the common law doctrine of merger sometimes referred to as the "facts test" but more accurately described as the "legislative intent test" in that the conclusion that on the particular facts of a case merger should occur depends on the further conclusion that the legislature did not intend separate punishments for "successive steps in [what] amount[ed] to but one crime in fact." *Commonwealth v. Mentzer, supra.* (I do not discuss these conclu-

---

1. Indeed, it is arguable that the Crimes Code having implicitly endorsed the common law merger doctrine, courts are now precluded from abolishing it.

sions in detail, for the majority opinion discusses and supports them very fully. *See* Majority at 119–122, 143–146.)

In the majority's view, it is necessary to consider whether the two offenses that do *not* merge under the common law doctrine of merger—aggravated assault and resisting arrest—*do* merge by virtue of the application of double jeopardy principles. *See* Majority Slip op. at 115–121. It is at this point that I part company with the majority. The United States Supreme Court has held that the double jeopardy provision of the Federal Constitution, which our Supreme Court has held equivalent to the double jeopardy provision of the Pennsylvania Constitution, *see Commonwealth v. Bostic,* 500 Pa. 345, 456 A.2d 1320 (1983), does no more "than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). Accordingly, double jeopardy principles do *not* proscribe separate punishment for aggravated assault and resisting arrest. This is so because the common law doctrine of merger does not proscribe separate punishment for those offenses, and the legislature has adopted that doctrine.

BROSKY, J., joins.